Filed 8/12/19

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | C086160 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.C. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD236815) |

APPEALS from a judgment of the Superior Court of Sacramento County, Marlene E. Clark, Juvenile Court Referee. Reversed with directions.

Roshni Mehta, under appointment by the Court of Appeal, for Defendant and Appellant J.C.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant C.W.

Traci F. Lee, Interim County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

Mother C.W. and father J.C. appeal from the juvenile court's orders terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] They contend the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applies, and that the county and juvenile court failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) We disagree with their first contention but conditionally reverse and remand the matter for further ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2016, Sacramento County Department of Child, Family and Adult Services (the County) filed a section 300 petition on behalf of the then one-year-old minor based on the risk of harm to the minor caused by parents' ongoing domestic violence. At the January 14, 2016 detention hearing, mother indicated her father was an enrolled member of the Picayune Rancheria of the Chukchansi Indians tribe and that she was eligible for enrollment as well. Enrollment had been closed for a number of years but had recently opened and she was intending to seek enrollment soon. She had completed an ICWA-020 form stating she was or may be a member of, or eligible for membership in, the Picayune Rancheria of the Chukchansi Indians tribe. Having received information that the minor may have Indian heritage, the juvenile court ordered

---

[1] Unless otherwise indicated, further undesignated statutory references are to the Welfare and Institutions Code.

2

the County to notice any federally recognized tribes and the Bureau of Indian Affairs (BIA), in accordance with the ICWA. The minor was ordered detained.

On January 25, 2016, the County sent notice (via certified mail) of the upcoming pre-jurisdiction status hearing, scheduled for February 9, 2016, to the Picayune Rancheria of the Chukchansi Indians tribe, the BIA, and the Secretary of the Interior. The notice included a family tree, which shows the maternal grandfather is affiliated with the tribe and that he lived on the Chukchansi reservation. It also stated that he was enrolled but indicated that his enrollment number was unknown. The notice also included a copy of the section 300 petition.

The pre-jurisdiction status hearing was continued from February 9, 2016, to February 16, 2016, and continued again to February 23, 2016. The County filed a jurisdiction/disposition report on February 16, 2016, recommending the minor be removed from parental custody and parents be offered reunification services. Parents submitted to the County's recommendation at the February 23, 2016 pre-jurisdiction hearing. The juvenile court took jurisdiction, declared the minor a dependent child of the court, and ordered the minor removed with reunification services to parents. Although the ICWA notice for the February 9, 2016 hearing had been sent to the proper designated agent at the proper address for the Picayune Rancheria of the Chukchansi Indians tribe, the notice had remained unclaimed at the time of the hearing. Accordingly, the County "resent" the notice on February 23, 2016.

The tribe received the "resent" ICWA notice on March 7, 2016. The juvenile court held an ICWA compliance hearing on April 26, 2016, at which the juvenile court found the minor was not an Indian child within the meaning of the ICWA and no further notice needed to be provided in the absence of new information. It does not appear from the record that the tribe was given notice of that hearing.

Both mother and father were scheduled to visit the minor twice a week but, in August 2016, it was reported that their visitation had been inconsistent. When they did

3

occur, the visits were positive. Mother played and interacted with the minor and was very affectionate. Although neither parent had made much progress in their case plan services, the juvenile court continued reunification services at the six-month review hearing.

In its February 6, 2017, 12-month review report, the County reported that father had been making progress in his case plan but mother had not made significant progress in hers. They had both been consistent, however, with visitation since August 2016 and, in January 2017, the visits had been promoted to unsupervised level, two times a week for four hours per visit. The minor was always excited and happy to see them. He recognized them from a distance and would try to get out of the social worker's arms to get to them when the parents came to visit. The visits went well and the parents interacted with the minor appropriately. The minor was observed to be happy during visits.

The minor was also doing well in his foster placement, where he had been since January 29, 2016. He was developing appropriately and appeared happy. The foster mother had expressed her desire to adopt the minor should reunification efforts fail. The County recommended continued reunification services for father, but termination of services for mother. At the review hearing on February 14, 2017, the juvenile court followed the County's recommendation, terminating mother's reunification services and continuing them for father.

At the time of the June 20, 2017, 18-month review hearing, father was reportedly homeless. Both parents had been consistent with their visits, although mother missed some visits when she had other appointments. The visits went well, but had been returned to "observed" status in February for mother and March for father, after parents had failed to provide clean drug tests. The minor recognized and got excited when he saw his parents for visits, especially father, and often cried when they left; although he settled down quickly after they were gone. He also enthusiastically anticipated visits if

4

someone mentioned "mom or dad" to him and would cry if a visit did not, thereafter, take place. Father had completed most of his case plan but was unable to demonstrate the ability to remain free from drug use. The juvenile court terminated reunification services and set the section 366.26 hearing.

By the time of the November 28, 2017 section 366.26 hearing, the minor had been placed in his foster-adoptive home for almost two years. He continued to greet parents enthusiastically at visits, visits went well, and the minor was affectionate toward both mother and father. The minor referred to parents as "mom" and "dad or dada." Parents played with him, gave him physical affection, brought him food, read to him, and appropriately disciplined him when necessary. The minor was disappointed when visits came to an end and would fall to the floor and cry. He would calm, however, once the parents were gone. Parents were scheduled to visit once a week but it was reported the parents had missed an average of one visit a month since February 2017.[2] Parents were also late to many, if not most, of their visits. The minor's caregiver reported that the minor would cry and become upset when visits were canceled.

The minor was doing well in his placement and his caregiver remained interested in adopting him. The minor and his caretaker—who the minor identifies as "mom"—had a caring and loving relationship, the minor looked to her to provide love and affection, and there were no barriers to adoption. The minor did not ask for parents between visits. The County recommended termination of parental rights.

The juvenile court found the minor adoptable and that the beneficial parental relationship does not apply. In making its findings, it found parents' visitation to be inconsistent. It also commented that, if it were to believe mother's testimony that the minor had a tantrum at the end of each and every visit, it would evidence that ongoing

---

[2] Mother estimated she missed only one or two visits.

visits with the parents were traumatic for the minor. The juvenile court also questioned whether the minor's tantrums at the end of visits demonstrated "disappointment that fun-play time is over as opposed to visits with . . . mother and/or . . . father are ending." The juvenile court concluded the minor would benefit more from a permanent home with an adoptive parent than from continuing inconsistent contact with parents. The juvenile court terminated parental rights, freeing the minor for adoption.

## DISCUSSION

### I

### *Beneficial Parental Relationship Exception*

The parents contend the juvenile court erred by failing to find they established the requirements for the beneficial parental relationship exception to adoption. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child. [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)

There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception].)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) And even if there is

such a bond, the parent must prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; accord *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1345 (*Jasmine D.*).)  "In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated."  (*In re Autumn H.*, at p. 575.)  On the other hand, " '[w]hen the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent[-]child relationship, the court should order adoption.' "  (*Jasmine D.*, at p. 1350; see also *In re Autumn H.*, at p. 575.)

"Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement."  (*Jasmine D., supra*, 78 Cal.App.4th at p. 1350.)  " 'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' "  (*In re Celine R.* (2003) 31 Cal.4th 45, 53, quoting *Jasmine D.*, at p. 1348.)  The beneficial parental relationship exception is an *exception* to the general rule that the court must choose adoption where possible, and it " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' "  (*In re Celine R.*, at p. 53.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)  The factual predicate of the exception must be

7

supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*In re K.P.* (2012) 203 Cal.App.4th 614, 622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

Here, the evidence of how many visits parents missed varied but the juvenile court found parents' visitation to be inconsistent. They were supposed to have weekly visits but in the four to six months approaching the section 366.26 hearing, parents missed a quarter to half of their visits each month, and were consistently late to the visits they attended. Thus, the first prong required to establish the beneficial parental relationship exception to adoption was not convincingly established.

Moreover, the existence of a beneficial relationship is also determined by considering a number of factors, including the age of the child, the amount of time the child spent in the parent's custody, the positive or negative effect of interaction between the parent and the child, and the child's particular needs. (*In re Amber M.* (2002) 103 Cal.App.4th 681, 689.) However, neither a loving relationship (*In re Jeremy S.* (2001) 89 Cal.App.4th 514, 523) nor the derivation of some benefit from continued parental contact (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466) is enough to establish this exception. Consideration of the factors in this case supports the juvenile court's findings.

At the time of the section 366.26 hearing, the minor was only three years old and had spent nearly twice as much of his young life with his current foster mother, who intends to adopt him, than he had spent with parents. Additionally, although the minor's visits with parents were "happy" and he was affectionate toward parents, his current caretaker meets his needs and, once visits were over and the minor was done with his tantrum, he went back to his foster home and thrived without any note of difficulty and without asking about parents between visits. The minor did run to parents at the beginning of visits, but the minor also ran to his caregiver for affection, referred to her as "mom," and was very close to her.

The minor was also observed to cry when visits were canceled and cry at the end of visits, although he would quickly calm once the visit was over. Mother testified that the minor had near meltdowns at the conclusion of every visit and argued these meltdowns demonstrate the significance of the minor's bond. To the contrary, the juvenile court concluded that, if it were to believe this to be true, it would "almost be compelled to conclude that ongoing visits are traumatic" for the minor. Additionally, the minor became upset when visits were canceled, which was occurring quite regularly by the time of the hearing. Thus, the juvenile court could reasonably conclude that derailing an adoption to preserve this relationship, maintained during periods of visitation which conclude in a manner causing the minor trauma, or get canceled and cause the minor distress, weigh against continuing such visits in lieu of providing permanency through adoption.

In sum, the Legislature's preferred plan is adoption. Here, while the minor has an affectionate relationship with parents and visits are generally "happy," the minor is very young and is doing well in his foster-adoptive home, and he does not ask about parents between visits. The visits with parents, while perhaps beneficial in some ways, are detrimental in others. It is not enough that the minor derive some benefit from a continued relationship with parents. (See *Jasmine D., supra*, 78 Cal.App.4th at p. 1349.) The juvenile court here could reasonably conclude that continued contact with parents would not promote the well-being of the minor to such a degree as to outweigh the well-being the minor would gain in a permanent home with new, adoptive parents.

## II

### *ICWA Compliance*

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency

9

proceedings. (See 25 U.S.C. § 1902; *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.) A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." (25 U.S.C. § 1901(3).) The juvenile court and the agency have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); former § 224.3, subd. (a).)[3]

Among the procedural safeguards imposed by the ICWA is the provision of notice to various parties. "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the [ICWA] would become meaningless." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) "[O]ne of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child. [Citation.]" (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 470 (*Desiree F.*).)

Accordingly, if the court "knows or has reason to know that an Indian child is involved," notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known. (25 U.S.C. § 1912; § 224.2; rule 5.481(b).) Notice must be sent whenever there is reason to believe the child may be an Indian child. (*Desiree F., supra*, 83 Cal.App.4th at p. 471.) "Notice shall be sent to all

---

[3] The Legislature amended several sections of the Welfare and Institutions Code related to the ICWA, effective January 1, 2019. (Assem. Bill No. 3176 (2017-2018 Reg. Sess.).) Hereafter, undesignated statutory references are to the Welfare and Institutions Code sections in effect in 2016 and undesignated rule references are to the California Rules of Court in effect in 2016.

tribes of which the child may be a member or eligible for membership" *for every hearing* until such time as the child's tribe has been determined or it has been determined the ICWA does not apply.  (§ 224.2, subds. (a)(3) & (b).)

No hearing shall be held until at least 10 days after receipts of notice by the requisite persons, including the duly authorized representatives of the tribes and the BIA.  (§ 224.2, subd. (d); rule 5.482.)  If neither the tribe nor the BIA has provided a determinative response within 60 days after receipt of the notice, the juvenile court may determine the ICWA does not apply, provided the court must reverse its determination of inapplicability if a tribe or the BIA subsequently confirms that the child is an Indian child.  (Rule 5.482(d)(1).)  Failure to comply with the notice provisions and to determine whether the ICWA applies is prejudicial error.  (*In re Kahlen W., supra*, 233 Cal.App.3d. at p. 1424; *Desiree F., supra*, 83 Cal.App.4th at p. 472.)

Parents contend the County and juvenile court failed to comply with the notice requirements and procedures of the ICWA, and accordingly, they argue it was error to terminate parental rights without prior notice of the hearing to the Picayune Rancheria of the Chukchansi Indians tribe.  In response, the County makes various arguments challenging California case law applying the ICWA notice requirements and further contends any ICWA notice violations were harmless.  We reject the County's arguments and conditionally reverse for further ICWA proceedings.

A.  *Jurisdiction, Ripeness, and Standing*

It is well established that a non-Indian parent has standing to assert an ICWA notice violation on appeal.  (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339.) Nonetheless, the County argues that this court does not have jurisdiction, the case is not ripe for appeal, and parents do not have standing because they did not first bring a petition for invalidation in the juvenile court.  We reject these contentions

The County points to the provision in the federal regulations, and the

11

corresponding state law and rule, providing for the filing of a petition for invalidation of prior orders entered in violation of the ICWA. These statutes provide that an Indian child, parent, Indian custodian, or the Indian child's tribe, may petition a court of competent jurisdiction to invalidate any action taken in a child custody matter that violates any provision of title 25 United States Code section 1911. (25 U.S.C. § 1914; 25 C.F.R. § 23.137; § 224, subd. (e); rule 5.486(a).) The County argues that because this specific remedy for ICWA violations exists, appeal is an improper remedy. It argues that a petition for invalidation is the exclusive remedy available for ICWA notice and inquiry violations and, as such, parents were required to unsuccessfully pursue such a petition in the juvenile court prior to seeking relief on appeal. Because they did not do so, it reasons, this court is without jurisdiction to hear their appeal.

Yet despite arguing that a petition for invalidation is the exclusive remedy for an ICWA violation, the County also argues parents do not have standing to file such a petition for invalidation. It argues the petition is only available to parents of Indian children—not parents of a potential Indian child for whom ICWA inquiry and notice was not effectuated. We decline to read the statutory authority cited by the County as precluding a parent of a potential Indian child from challenging the adequacy of ICWA inquiry and notice by appeal. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 636 [applying the maxim of jurisprudence that " '[for] every wrong there is a remedy' "].) Such a construction would preclude review of almost any case in which the juvenile court or agency failed to inquire about Indian ancestry, or failed to send ICWA notice to pertinent tribes, circumventing the purpose of providing notice to tribes under the ICWA. No one would have standing to challenge the ICWA inquiry and/or notice violations until the child was found to be an Indian child—yet, the relevant tribes and individuals would not have been given the opportunity to find a child to be a tribal member because of the inquiry and/or notice deficiency. We do not construe statutes in ways leading to absurd

12

consequences or defeating the general purpose and policy behind them. (*Anaheim Union Water Co. v. Franchise Tax Bd.* (1972) 26 Cal.App.3d 95, 105-106.)

Also, despite arguing that a petition for invalidation is the exclusive remedy for an ICWA violation, the County also appears to concede that "[w]ithout a doubt, a non-Indian parent has standing to assert an ICWA notice violation on appeal." To the extent the County is inviting this court to depart from or reexamine established case law and conclude that remedy by appeal should be limited to parents of decidedly Indian children and not available to a parent of a "*potentially*" Indian child for whom ICWA inquiry and notice was not effectuated, we decline the invitation. Appeal has traditionally been found to be the appropriate vehicle by which to raise an ICWA notice or inquiry violation, even in the case of a "potentially" Indian child, and it is appropriate here.

## B. Timeliness/Forfeiture

We also decline the County's invitation to reexamine the "non-forfeiture doctrine"—or, more accurately described as the principle that a parent is not foreclosed from raising an ICWA inquiry or notice violation even if the issue could have been more timely raised by appeal from an earlier order.

It is well established, and the California Supreme Court has recently affirmed, that a parent may raise an ICWA inquiry or notice violation on appeal from an order terminating parental rights, even if the parent did not appeal an earlier order finding the ICWA inapplicable. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 9-15.) Because the court's duty to inquire whether the minor is an Indian child continues until proper notice is given, any error in not giving proper notice is also continuing in nature and may be challenged at any time during the dependency proceedings, even from an order terminating parental rights. (*Ibid.*; see also *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739.)

13

*C. Notice Requirement*

Again, the County suggests we revisit established case law and depart from the requirement that the agency give ICWA notice to tribes when there is reason to know a child may be eligible for membership and require notice only when the court knows or has reason to know the child *is definitively* a member (or knows a parent *is definitively* a member *and* the child is eligible for membership). We decline the invitation. Determination of tribal membership or eligibility for membership is made exclusively by the tribe. (§ 224.3, subd. (e).) Notice enables a tribe to investigate and determine whether a child is a member or eligible for membership in the tribe. (*Desiree F., supra*, 83 Cal.App.4th at p. 470.) This purpose may be thwarted if notice is provided only when the court or agency already knows the child is definitively a member, since it is the tribe that decides who is eligible for membership. This is especially true since even information that a child is not eligible for enrollment in a tribe is not determinative of the child's membership status. (§ 224.3, subd. (e)(1).) Thus, if the court or agency has reason to know the child may be eligible for membership, notice should be provided to permit the tribe to investigate and make that determination. (See *Desiree F.*, at p. 470.)

Here, having reason to know the minor may be an Indian child, the juvenile court ordered the County to provide notice to the Picayune Rancheria of the Chukchansi Indians tribe in accordance with the ICWA. The County knew that the maternal grandfather was a member of that tribe and that he lived on the tribe's reservation. It also knew, or should have known, that mother was found to be an Indian child when she was a dependent of the court and that the Picayune Rancheria of the Chukchansi Indians tribe had intervened in that case. We conclude, as did the juvenile court in this case, that the County was required to send ICWA notice to the Picayune Rancheria of the Chukchansi Indians tribe in this case.

## D. Inadequate Notice

Having determined that notice to the Picayune Rancheria of the Chukchansi Indians tribe was required in this case, and that the issue of whether adequate notice was given under the ICWA is properly before this court in this appeal, we now address the merits of parents' contention.

Here, the County sent notice to the Picayune Rancheria of the Chukchansi Indians tribe on January 25, 2016, of the "Pre-Jurisdictional Status Conference," which was scheduled for February 9, 2016. The juvenile court was apprised that the tribe had not received the notice but proceeded with the hearing, which was ultimately held on February 23, 2016. Thereafter, *no notice* of *any* subsequent hearing was ever sent to either the tribe or the BIA. Nonetheless, the court held the jurisdiction and disposition hearing on February 23, 2016, sustained the petition, removed the minor, and ordered reunification services. *After* that hearing, the County "resent" notice—apparently resending the same documents (i.e. the family history, section 300 petition, and notice of the then-passed February 9, 2016 hearing date)—thus, only providing the tribe with notice of a hearing which had already passed. The tribe received that notice on March 3, 2016. On April 26, 2016, less than 60 days thereafter, the juvenile court held an unnoticed ICWA compliance hearing and found the ICWA did not apply.

The failure of the County to provide notice of upcoming hearings, the failure of the juvenile court to assure notice of hearings had been duly provided to the tribe, and the failure of the juvenile court to wait 60 days after the tribe received notice before making its inapplicability finding, constituted error. Thus, the juvenile court's finding that the ICWA does not apply was also error.

## E. Harmless Error

Finally, we reject the County's contention that the error in failing to send timely notice of the hearings to the Picayune Rancheria of the Chukchansi Indians tribe was

harmless error. The record reflects the Picayune Rancheria of the Chukchansi Indians tribe responded to the County's late, *non-compliant* notice on October 4, 2018, stating the minor and mother are eligible for membership in the tribe through lineal dependency by the maternal grandfather, who is an enrolled tribal member, and that the tribe considered the minor an Indian child and intended to intervene in the proceedings. The Picayune Rancheria of the Chukchansi Indians tribe made the same representation to this court in its request to file a notice of intervention in this court. We note, also, that the tribe intervened in mother's case when she was a dependent child. It is apparent from these actions the tribe likely would have sought involvement in these proceedings had it been duly noticed.

Yet, the only notice of these proceedings received by the tribe was a notice of the pre-jurisdiction hearing, which it received long after the date of the hearing had passed. While we do not fault the County for the delay in the tribe's receipt of that notice (as it was sent before the hearing to the proper designated agent at the proper address), the County never sent notice of any subsequent upcoming hearing—most particularly the jurisdiction and disposition hearing or the ICWA compliance hearing. The County's failure to provide timely, statutorily compliant notice of hearings appears to have resulted in the tribe's inability to participate in the proceedings.

Under these circumstances, it cannot be said that the County's error in not providing the Picayune Rancheria of the Chukchansi Indians tribe with notice of the hearings prior to the juvenile court's finding that the ICWA did not apply, did not result in an erroneous finding. That error appears to have also resulted in the County's failure to notify the Picayune Rancheria of the Chukchansi Indians tribe of subsequent hearings, including the section 366.26 hearing. Accordingly, we must reverse for further proceedings.

16

## DISPOSITION

The order terminating parental rights is conditionally reversed and the matter is remanded for compliance with the notice provisions of the ICWA. If, after further and formal notice by the County to the Picayune Rancheria of the Chukchansi Indians tribe, the minor is found not to be an Indian child, the order terminating parental rights shall be reinstated. If, however, the minor is found to be an Indian child as defined by the ICWA and the court determines the ICWA applies to this case, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA, including considering any petition filed to invalidate prior orders. (25 U.S.C. § 1914; § 224, subd. (e).)

                                                                   _____RAYE_____, P. J.

We concur:

_____BLEASE_____, J.

_____MAURO_____, J.

17