Filed 10/28/20  In re D.W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re D.W., et al., Persons Coming Under the Juvenile Court Law. | |
| | D077097 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ004225A-C) |
| Plaintiff and Respondent, | |
| v. | |
| BRITTNEY W., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant Brittney W.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

Brittney W. (Mother) appeals from a judgment of the juvenile court terminating her parental rights to her three minor children ("the children" or "the W. children"). Mother's sole contention on appeal is that the juvenile court failed to comply with the federal Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). D.W., Sr., the W. children's father (Father) is an enrolled member of the Barona Band of Mission Indians (the Barona Band).

The San Diego County Health and Human Services Agency (the Agency) notified the Barona Band of the proceedings, as required by ICWA, and the Barona Band initially indicated the W. children were not eligible for enrollment. The Barona Band later requested, and the juvenile court ordered, that Father and the W. children undergo DNA testing to determine the children's eligibility for enrollment. Father did not cooperate, and the DNA testing was not completed. Mother contends the juvenile court erred by finding that ICWA did not apply despite the outstanding request for DNA testing. We disagree and affirm the judgment of the juvenile court.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married from January 2012 through January 2016. All three of the W. children were born during the marriage. Father was listed on the birth certificates for each of the children and the family court made a paternity finding indicating that Father was the father of all three children during the dissolution proceedings.

In May 2015, the superior court granted a restraining order against Mother and awarded Father full custody of the W. children. Thereafter, the children lived with Father and his girlfriend, R.W. R.W. had four other children, two of whom also lived with Father and R.W. Father was the alleged father of R.W.'s youngest child, E.W.

2

*Initial Detention*

On December 21, 2017, the San Diego Health and Human Services Agency filed petitions on behalf of the W. children and E.W. alleging they were at risk of harm due to Father's and R.W.'s use of narcotics and prescription pain medication.[1] The Agency included a form indicating that Father was an enrolled member of the Barona Band. In the associated detention report, the Agency indicated that the W. children were attending a school on the Barona reservation, and that Father had requested ICWA representation.

The juvenile court found the Agency made a prima facie showing on the petitions and detained the children. The W. children, along with their half-sister E.W., were initially placed with a paternal aunt. A couple of weeks later, the Agency sent ICWA notices to a number of tribes, including the Barona Band. The notices included a copy of the juvenile court's December 21, 2017 detention orders and information regarding the upcoming jurisdiction hearing.

An Agency social worker tried to contact Father several times in January, but he did not answer his phone and the social worker was unable to leave a voicemail message. The Agency also made two unannounced visits to Father's home, but he was not home either time. A tribal representative, Valarie Littlejohn, indicated she was also unable to reach Father. The paternal aunt indicated Father was attending supervised visits with the children, and that the visits were going well.

---

[1] Although removed at the same time, E.W. has a different mother and, thus, the dependency case concerning E.W. was separate from the case concerning the three W. children. We focus our discussion herein on the three W. children and include references to E.W. only as relevant to the case concerning the W. children.

On January 19, 2018, the paternal aunt indicated that she could no longer care for the children. She said that Father and R.W. were "too comfortable" and would not do what they needed to do if the children remained in her care. E.W. was placed with a maternal relative and, in early February, the W. children were placed in the home of a non-relative extended family member (NREFM). The home was near the reservation, the NREFM was willing to transport the W. children to the school they attended on the reservation, and the tribe approved of the placement.

*Contested Jurisdiction and Disposition Hearing*

The juvenile court held a contested jurisdiction and disposition hearing on April 23, 2018. In an addendum report submitted that day, the Agency indicated Father did not return phone calls and his voicemail was not set up. Father had some contact with the children's caregiver but only through text message and had cancelled his most recent visit with the children. The court made true findings on the petitions, ordered that the children remain placed with the NREFM, and ordered that the Agency provide reunification services for Mother and Father.

Tribal representative Littlejohn was present at the hearing and reported that the children were not eligible for enrollment in the Barona tribe. The juvenile court found the Agency had properly noticed each of the Native American Indian tribes that had been identified by Mother, Father or the Agency; the statutory 60-day period had run; and the tribes that responded, including the Barona Band, indicated the children were not eligible for enrollment. The court therefore made a finding that ICWA did not apply.

In a status review report submitted in preparation for the six-month review hearing on October 22, 2018, the Agency indicated it had no further

4

contact with Father over the previous six-month period, despite several attempts to contact him via phone, letter, and his attorney. In an addendum report submitted a few weeks later, the Agency indicated that a social worker was able to reach Father by phone once, on October 19, but Father appeared to be under the influence of a controlled substance and his speech was slurred and incoherent to the point the social worker could not understand him. In addition, Father had not had any visits or phone calls with the children, and there was no evidence Father had been in contact with the Barona Band. Father's counsel also indicated she had not had any contact with Father.

The Agency noted it had consulted with Barona Band tribal representatives regularly about the case. The Agency also continued to the provide Barona Band with notices of upcoming juvenile court hearings regarding the children. The Agency recommended the juvenile court terminate reunification services for Father and order an additional six months of services for Mother, and indicated the Barona Band agreed with those recommendations. The juvenile court set the matter for trial.

Father participated in one supervised visit with the children in November but cancelled the next two visits and did not have any further contact with the children or their caregiver thereafter.

*Barona Band Request for DNA Testing*

On January 22, 2019, a tribal representative obtained a letter from the Barona Band indicating Father was an enrolled member and, therefore "his children are direct lineal descendants of our tribe." The tribe then requested copies of the paternity declaration, in order to further assess the children's eligibility for membership.

At a hearing on January 23, the juvenile court inquired about the letter and whether "we need either a blood test or declaration of parentage."[2] Father's counsel indicated she had provided the social worker with a copy of the divorce judgment, which adjudicated Father as the father of all three W. children. The court ordered the Agency to provide an update as to ICWA at the next hearing and, specifically, whether the children needed to be made available for testing.

In February 2019, the Agency recommended termination of reunification services for both Mother and Father. Mother had been involved in an altercation while holding her infant child, and the Agency indicated there was an open investigation for allegations of child abuse. Father reported that his drug use had escalated from oxycodone to heroin, and that he had also recently used fentanyl and methamphetamine. The Barona Band agreed with the Agency's recommendation to terminate reunification services for both parents. Around the same time, the tribe indicated it would not provide a letter indicating the children were eligible for membership.

On March 8, 2019, the Agency submitted a request for a special hearing and asked that the juvenile court order the Father and the children to undergo paternity testing, to determine tribal eligibility. In an associated

---

[2] As noted, E.W. was also removed from Father's care in December 2017. Although the dependency case regarding E.W. was separate from that of the W. children, the record indicates the same social worker handled both cases, and the juvenile court at times held hearings concurrently and cross-referenced information from the Agency's reports in both cases. For example, it appears the court's inquiry regarding the need for a blood test was based on information contained in an Agency report submitted in E.W.'s case. Accordingly, we grant the Agency's unopposed motion to augment the record with the Agency reports submitted in E.W.'s case dated January 23, February 12, and April 5, 2019. (Cal. Rules of Court, rules 8.155, subds. (a)(1)(A) and (a)(2); 8.340, subd. (c); 8.410, subd. (b)(1); 8.416, subd. (d).)

addendum report, the Agency indicated the tribe was requesting the Agency provide DNA evidence of Father's paternity and the Agency wished to assist the tribe in determining the children's potential eligibility for enrollment.

The Agency tried to reach Father several times in March. Father's voicemail box was not set up, but a social worker sent a text message to Father requesting that he call back. On March 15, a social worker visited Father's residence and left a business card informing Father there was a court hearing the following Monday, March 18, and again on April 5, 2019. The Barona Tribal Enforcement reported Father had been seen driving recklessly on the reservation while under the influence; they had been called to conduct welfare checks on Father's residence; and there were various people known to be associated with heroin use living at Father's residence.

At a hearing on Monday, March 18, 2019, the juvenile court granted the request and issued an order for genetic testing. Specifically, the court ordered "[F]ather to submit to genetic testing [at a specified date and time]" and the Agency "to make the child[ren] available for testing."

The Agency attempted to contact Father at least five times to inform him of the order and assist him in obtaining a DNA test but was not successful. In April, the Agency reported that Father's drug use continued "to escalate to the point that the Tribe and Agency have requested welfare checks be done to ensure that he is alive." The Agency continued to recommend that the juvenile court terminate reunification services for both parents.

*Termination of Reunification Services*

In April 2019, the juvenile court terminated reunification services for both Mother and Father. At the conclusion of the hearing, counsel for the Agency noted this was "a case where ICWA does not apply but is a spirit-of-

ICWA case". Counsel indicated the Agency continued to work with the tribe, the tribe had indicated in February that it would not provide a letter saying the children were eligible for enrollment, and the Agency was making efforts to get Father to take the DNA test but that they had been unsuccessful. In the written orders, the court made an additional finding that ICWA did not apply. In addition, the court noted a tribal representative was actively involved in the case plan and the Agency "solicited and integrated into the case plan" the input of the tribal representation.

Mother filed a section 388 petition shortly before the section 366.26 hearing. She requested return of the children with family maintenance services, extended reunification services, and/or expanded visitation to unsupervised or overnight visitation.

*Termination of Parental Rights*

On November 12, 2019, the juvenile court denied Mother's section 388 petition and terminated Mother's and Father's parental rights. A tribal representative was present at the hearing and indicated the children's caregiver was working with the tribe. In addition, the court noted the W. children had contact with their sibling, E.W., at school and at tribal functions. In its written orders, the court found, "Notice pursuant to the Indian Child Welfare Act is not required because the court knows the child is not an Indian child. Reasonable inquiry has been made to determine whether the child is or may be an Indian child."

Mother appeals.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court erred by finding that ICWA did not apply absent the completion of the court-ordered DNA testing. She asserts the order terminating her parental rights must

8

therefore be reversed and that the matter must be remanded to the juvenile court with directions to order DNA testing of the children and Father or paternal relatives.

*I. Relevant Law and Standard of Review*

Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) The federal statute defines "Indian child" as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" and establishes minimum standards for the removal and placement of such children in foster or adoptive homes reflecting the unique values of their Indian culture. (25 U.S.C. §§ 1901(3), 1902, 1903, subd. (4); *In re A.W.* (2019) 38 Cal.App.5th 655, 662 (*A.W.*).)

The juvenile court and the Agency have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies. (*In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; Cal. Rules of Court, rule 5.481(a); Welf. & Inst. Code, § 224.2, subd. (a).) In cases "where the court knows or has reason to know that an Indian child is involved," ICWA requires the Agency, or other party seeking adoption or foster care placement, to notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912; *In re Isaiah W., supra,* 1 Cal.5th at p. 5.) This is often referred to as the ICWA notice provision.

California adopted the main provisions of ICWA into California statutory law in 2006. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 703-704.) Following the enactment of new federal regulations concerning ICWA

9

in 2016, California amended its own statutes, including portions of the Welfare and Institutions Code[3] related to notice and inquiry.  (25 C.F.R. § 23.107(c); 81 Fed. Reg. 38803 (June 14, 2016) ["The final rule . . . provide[s] specific guidance regarding what constitutes 'reason to know' that a child is an Indian child"]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650, fn. 7.; *A.W., supra,* 38 Cal.App.5th at p. 662, fn. 3; Assem. Bill No. 3176 (2017-2018 Reg. Sess.).)  Those changes became effective January 1, 2019.  (*A.W.,* at p. 662, fn. 3.)

As relevant here, section 224.2 now provides additional guidance regarding the juvenile court and Agency's obligations to provide inquiry and notice pursuant to ICWA.  (§ 224.2, subds. (d)-(f).)  Section 224.2 specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b).)  Further, if the court or social worker "has *reason to believe* that an Indian child is involved in a [dependency] proceeding," section 224.2 requires additional inquiry, which includes but is not limited to "[i]nterviewing the parents, Indian custodian, and extended family members to gather the information required [by the notice provisions set forth in section 224.3, subdivision (a)(5)]."  (§ 224.2, subd. (e) [emphasis added].)  If that further inquiry indicates there is *reason to know* the child is an Indian child, section 224.2 requires the Agency to provide notice to the tribes in accordance with section 224.3, subdivision (a)(5).  (§ 224.2, subd. (f).)

---

3    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Section 224.2 defines "reason to know" using the same six-part definition as set forth in the federal regulations adopted in 2016. (Compare § 224.2, subd. (d) with 25 C.F.R. § 23.107(c).) Among other factors, there is reason to know that a child is an Indian child if the child's parent lives on an Indian reservation. (§ 224.2, subd. (d)(2).)

"If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an Indian child, the court shall confirm . . . that the [A]gency or other party used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership." (§ 224.2, subd. (g).) If the court finds that the Agency has conducted "proper and adequate further inquiry and due diligence" and there is no "reason to know" the child is an Indian child, the juvenile court may find that ICWA does not apply. (§ 224.2, subd. (i)(2).) However, the court "shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to section 224.3." (*Ibid*.)

On appeal, we review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) Where the facts are undisputed, we independently determine whether the requirements of ICWA have been satisfied. (*In re J.L.* (2017) 10 Cal.App.5th 913, 918 (*J.L.*).)

*II. Analysis*

Father is an enrolled member of the Barona Band. Accordingly, as Father's children, the W. children would be Indian children under the federal

11

ICWA statute if they were eligible for enrollment in the tribe and, thus, the juvenile court had reason to know the children were Indian children at the outset of the dependency case. (See 25 U.S.C. § 1903, subd. (4); *A.W., supra,* 38 Cal.App.5th at p. 662; see also § 224.2, subd. (d)(2).) Based on this knowledge, the Agency provided notice to the Barona Band as required by ICWA and the tribe initially indicated the children were *not* eligible for enrollment. Accordingly, in April 2018, the juvenile court appropriately determined that ICWA did not apply. Mother does not dispute that initial finding.

However, approximately nine months later, the Barona Band indicated that Father was an enrolled member and, therefore, any children of Father's were lineal descendants of the tribe. The tribe requested DNA evidence of Father's paternity and the juvenile court ordered that Father and the W. children undergo DNA testing. Despite several attempts, the Agency was unable to reach Father and the DNA testing was not completed. Because the Barona Band declined to provide a letter stating the children were eligible for enrollment, the juvenile court once again found, on April 5, 2019, that ICWA did not apply.

Mother contends the juvenile court erred in making the second finding that ICWA did not apply because there was not substantial evidence the Agency used due diligence to verify whether the children were eligible for membership in the tribe, as required by section 224.2, subdivision (g). We disagree.

The record indicates the Agency had been trying to reach Father about the case, in general, for months, and that the Agency continued to do so after the juvenile court ordered the DNA testing. The agency called Father, sent him text messages, sent him letters, made unannounced visits to his home,

12

and consulted with his attorney and the tribe. However, by April 2019, Father's drug use had escalated "to the point that the Tribe and Agency [had] requested welfare checks be done to ensure that he [was] alive," and Father did not respond to any of the Agency's attempts to reach him. Moreover, the only reason the juvenile court ordered the DNA testing in the first instance was because the Agency requested it, in attempt to assist the tribe in determining the children's potential eligibility for enrollment. Accordingly, there is substantial evidence the Agency used due diligence to work with the Barona Band to verify whether the children were eligible for membership.[4] (See 224.2, subd. (g); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1054 [Agency exercised due diligence by attempting to reach tribes several times despite lack of response].)

Mother argues the Agency's efforts to reach Father were not sufficient because the Agency did not specifically indicate to Father that it was attempting to reach him concerning DNA testing or the children's eligibility for enrollment in the tribe, but there is no reason to believe Father would have been more cooperative if the Agency had done so. Father did not return any of the Agency's phone calls or text messages and was incoherent the one time the Agency was able to reach him, in October 2018. By April 2019, Father was using drugs so heavily that the Tribe and Agency had requested welfare checks to ensure that he was alive, and when an adoption social worker did get ahold of Father in May, he claimed he did not know what she

---

4    Mother argues the juvenile court did not make an affirmative finding on the record that the Agency used due diligence as required by section 224.2, subdivision (g) but, in its written orders, the court found reasonable inquiry had been made. To the extent Mother believes that finding is not sufficient, the requisite finding may be inferred from that and the juvenile court's subsequent finding that ICWA did not apply. (See *In re Kristin W.* (1990) 222 Cal.App.3d 234, 253.)

was talking about and hung up the phone. Thus, the record indicates Father was not interested in participating in any aspect of the dependency proceedings. Further, there was no evidence Father was concerned about the children's eligibility for enrollment or that he would have responded if the Agency had told him that was the reason for their calls.

Mother asserts that the Agency should have obtained DNA from Father's relatives in the absence of obtaining DNA from Father himself. Relying on section 224.2, subdivision (e),[5] Mother asserts the juvenile court and Agency had a duty to make further inquiry of Father's relatives regarding the children's eligibility. Section 224.2, subdivision (e)(2) indicates that the "further inquiry" required includes interviewing additional family members. (*Ibid.*) Although it is not exhaustive, section 224.2, subdivision (e)(2) does not include DNA testing, or anything nearly as invasive, in the types of further inquiry identified. (*Ibid.*) Mother provides no additional authority to support her assertion that the juvenile court or Agency had a duty to obtain DNA testing from Father's relatives, and we decline to conclude that section 224.2, subdivision (e) requires such testing. Moreover, there is no evidence in the record the Barona Band requested or would have accepted results based on DNA testing relatives, as opposed to Father himself.

Mother asserts the record does not indicate what entity or person within the Barona Band had the authority to decide whether the children

---

5       Mother refers to section 224.2, subdivision (e)(3) in her briefing. Section 224.2, subdivision (e) was amended and renumbered in September 2020 and the current version does not include a subdivision (e)(3). (See § 224.2, amended by Stats.2019, c. 434 (A.B.686), § 2, eff. Jan. 1, 2020; Stats.2020, c. 104 (A.B.2944), § 15, eff. Sept. 18, 2020.) We refer to the current statute but note that the portions of the statute concerning the types of inquiry required were not changed in any material way.

were eligible for membership and, therefore, the statements of the tribal representatives were not sufficient. To the contrary, the record indicates that the Southern Indian Health Council, and specifically tribal social worker Littlejohn, was appropriately identified as a tribal representative. Regardless, there is no indication the juvenile court relied solely on the statements of the tribal representatives. As noted, the Agency provided notice to the Barona Band, as required by the statute, and the Barona Band never provided any determinative statement indicating the children were eligible for enrollment. Moreover, the record suggests that it was the same representatives that requested the DNA testing in the first instance. Thus, to the extent their statements were not relevant to the court's ICWA finding, the same is true of that request.

Finally, even if we were to find that the juvenile court did not comply with ICWA or the California statutes implementing ICWA, which we do not, we would conclude that any such error was harmless. (See, *In re E.W.* (2009) 170 Cal.App.4th 396, 402-403.) The Agency treated the case as a "spirit-of-ICWA" case and continued to work with the tribe throughout the case. The tribe actively participated in the case plan and was in agreement with the Agency's recommendations and the placement of the W. children. In addition, the Agency provided notice of the court hearings, including the section 366.26 hearing to the Southern Indian Health Council, a tribal representative attended the section 366.26 hearing, and the juvenile court gave the tribal representative an opportunity to be heard.

Mother's arguments to the contrary assume that the children were eligible for enrollment. However, as discussed, the Barona Band was aware that Father had been adjudicated the biological father of the W. children and the Agency exercised due diligence to obtain DNA testing to further confirm

15

Father's paternity, but Father refused to cooperate. Thus, the Barona Band had all the information available to the Agency and declined to find the children eligible for enrollment. (cf. *In re Jack C.* (2011) 192 Cal.App.4th 967, 981 [tribe indicated children would be enrolled once the tribe received a copy of the father's birth certificate].) There is no indication that the outcome would have been different if the Agency or juvenile court had acted differently with respect to ICWA.

For the foregoing reasons, we conclude substantial evidence supports the juvenile court's finding that ICWA did not apply, and that any error in failing to comply with the ICWA statutes was harmless.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

16