Filed 5/20/25  In re T.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.L. et al., Persons Coming Under the Juvenile Court Law. | C102827 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. Nos. JD242327, JD242328) |
| Plaintiff and Respondent, | |
| v. | |
| V.L., | |
| Defendant and Appellant. | |

Appellant V. L. (mother) appeals from the juvenile court's order terminating her parental rights as to her sons T.L. and S.L. freeing them for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; statutory section references that follow are to the Welfare and Institutions Code.)  Mother contends the initial inquiry under the Indian Child Welfare

1

Act (ICWA) by the Sacramento County Department of Child, Family and Adult Services (Department) was insufficient because the Department failed to ask available maternal relatives about possible Native American ancestry. (25 U.S.C. § 1901 et seq.; § 224.2.) The Department does not dispute mother's argument and concedes a remand with directions for compliance with the ICWA is appropriate. We agree with the parties and will conditionally reverse subject to full compliance with the ICWA and related California law.

FACTS AND HISTORY OF THE PROCEEDINGS

This background is limited given the sole issue on appeal. In early 2023, the Department filed separate dependency petitions for T.L. and S.L. (the children) under section 300, subdivision (b)(1) alleging the children had suffered or were at substantial risk of suffering serious physical harm or illness due to mother's longstanding substance abuse and recent positive drug tests. The juvenile court detained the children on January 23, 2023. At that hearing, mother denied Native American ancestry, consistent with her Parental Notification of Indian Status (ICWA-020) form. As such, the court found there was no reason to know or believe the children were Indian children. Nevertheless, the court ordered the Department to "comply with its affirmative and continuing duty to inquire" of available and extended family members whether the children had Native American ancestry.

In March 2023, the juvenile court found jurisdiction over the children, adjudged them dependents of the court, and ordered reunification services to mother. The Department left messages with the children's maternal grandmother, R.W., as well as a godmother, D.G. concerning placement. The Department also spoke with maternal cousin, S.P., who was not interested in placement. It does not appear these individuals were asked about possible Native American heritage.

2

The Department's six-month review report recommended the termination of reunification services and the setting of a section 366.26 hearing. This report summarily stated, "The Indian Child Welfare Act does not apply." Following mother's failure to appear for the contested hearing, the juvenile court terminated mother's services and set the matter for a section 366.26 hearing, as well as an ICWA compliance hearing.

The Department's status report preceding the December 2023 ICWA compliance hearing summarily stated, "This [p]aralegal is unaware of any information before the Court that would indicate this child is an Indian [c]hild as defined by the Indian Child Welfare Act." At that hearing, the juvenile court granted the Department's request for a continuance to prepare a formal ICWA compliance report.

According to that report, the Department's ICWA investigation continued with attempts to contact individuals believed to be related to mother. The Department also investigated mother's new claim that the alleged father, M.C., might have Seminole Indian heritage. This included contacting the Seminole Tribe of Florida, the Seminole Nation of Oklahoma, and the Miccosukee Tribe of Indians by phoning, e-mailing and sending certified letters. Ultimately, the Department received responses from these tribes stating the children did not appear on the tribal rolls or as enrolled members.

The Department also learned that R.W. was not the children's biological grandmother as previously thought but had cared for mother in the foster care system. R.W. did not know "the maternal and paternal grandparents" or "mother's biological family." The Department also spoke with maternal cousin, S.P., who was unaware of any Native American heritage in mother's family. S.P. told the Department she "does not know the mother's biological family." Further, the Department spoke with maternal godmother, D.G., who had been close friends with mother for over 20 years but was unrelated to her. D.G. did not have any information concerning mother's extended family.

On February 21, 2024, the juvenile court ordered the Department to investigate mother's biological relatives in light of the discovery that she had been a dependent child herself and continued the ICWA compliance hearing for that purpose.

The Department's March 2024 ICWA compliance report explained that Department records showed mother was declared a dependent of the Department in February 2002. Mother's biological mother was T.S., and her last known address had been in Benton Harbor, Michigan. Mother's father, St.L., had been incarcerated in Folsom prison and was married to K.L. St.L. and K.L. had a daughter, A.L. Mother's dependency file also showed she had a grandmother, J.B., and a grand cousin, S.B.

The Department attempted to contact K.L., A.L., and S.B. at phone numbers from Department records, but each number had either been disconnected or no longer corresponded with the correct person. The Department did not document any attempt to contact mother's grandmother, J.B., at her identified phone number or otherwise. The Department also failed to document any efforts to contact mother's mother, T.S., for which the Department had a partial mailing address. The Department did locate mother's father, St.L., at Mule Creek State Prison. Rather than completing a background check, the Department social worker e-mailed St.L. through a prison counselor requesting information on mother's family members, as well as any information concerning any possible Native American heritage. The Department had not heard anything from St.L. when it filed the compliance report two days later. Nonetheless, the Department again requested the juvenile court determine it had complied with its duty of further investigation, that there was no reason to know or believe the children were Indian children, and that the ICWA did not apply.

The Department filed an additional compliance report on March 8, 2024, which contained no new information concerning mother's relatives. However, on April 12, 2024, the Department filed an affidavit related to service, which showed that the Department had mailed letters to mother's father, St.L., and mother's mother, T.S., asking

4

about the whereabouts of the children's alleged father. There is no indication the Department also asked about any possible Native American heritage.

On April 24, 2024, the juvenile court adopted the Department's proposed findings and orders, determining that there was no reason to believe or know the children are Indian children, that the Department had completed its further inquiry, and that the ICWA did not apply.

Following delays unrelated to ICWA, the juvenile court terminated mother's parental rights to the children on December 18, 2024. Mother timely appealed.

DISCUSSION

The ICWA "protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings." (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an "Indian child" as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA [citation]), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); § 224.2, subd. (a).) "Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' " (*Dezi C.*, at p. 1125, fn. omitted.)

A juvenile court's finding that the ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) The court's "fact-specific

5

determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.)

In this case, mother contends the Department failed to conduct an adequate initial inquiry into whether the children have Native American ancestry, complaining the Department failed to ask three known maternal relatives about possible Native American ancestry. The Department "does not oppose mother's duty of inquiry argument" and agrees the matter should be remanded for further proceedings "for compliance with the ICWA." We accept this concession.

Given these inadequate inquiries, *Dezi C.* has explained that "conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3" is required. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.) Accordingly, we will conditionally reverse and remand the case to the juvenile court for further proceedings. The Department is to make additional inquiry and documentation efforts consistent with its duties, and the juvenile court shall hold a hearing thereafter to determine whether, in light of the outcome of the inquiry as documented, the ICWA applies. (*Id.* at p. 1137.) If the juvenile court determines that the inquiry is proper, adequate, and duly diligent and concludes that the ICWA does not apply, any inquiry error is cured, and the judgment shall be reinstated. (*Id.* at pp. 1137-1138.) In contrast, if the inquiry reveals a reason to know that the minors are Indian children, the tribe has been notified, and the tribe determines that the minors are members or citizens, or eligible for membership or

6

citizenship of an Indian tribe, then the ICWA applies, and the juvenile court must proceed in accordance with the ICWA.  (*Id*. at p. 1138.)

## DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of the ICWA, as well as the requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5).  If the juvenile court thereafter finds a further inquiry was proper and adequate, due diligence has been conducted, and concludes the ICWA does not apply, the orders shall be reinstated.  If, however, the juvenile court concludes the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions.


_____,

HULL, Acting P. J.


We concur:


_____

ROBIE, J.


_____

DUARTE, J.