Filed 7/9/24  In re J.D. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | B334978 (Los Angeles County Super. Ct. No. 20LJJP00764) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Sarah D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Judge Pro Tempore. Conditionally affirmed and remanded with instructions.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Sarah D. (Mother) appeals from the juvenile court's order terminating parental rights to her son, J.D., pursuant to Welfare and Institutions Code[1] section 366.26. Before the court terminated Mother's parental rights, it found that there was no reason to know J.D. was an "Indian child," as defined by the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.).

Mother does not contest the substantive grounds for termination of her parental rights, but argues we should reverse because the court's ICWA finding was based on inadequate inquiry. In particular, she claims that although the Los Angeles County Department of Children and Family Services (DCFS) had information that maternal great-great-great grandmother, Sarah N.D., was Cherokee, it failed to provide her name or other identifying information to the Cherokee Nation. The Cherokee Nation responded by letter that it had been provided with only Mother's and J.D.'s names, familial relationship (i.e., mother and child), and birthdates, and could not "validate or invalidate Cherokee tribal eligibility without more information." DCFS did not provide further information to the tribe and represented to

_____

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

2

the court that the tribe had indicated J.D. was not an Indian child.  The court found ICWA did not apply.

We agree with Mother that DCFS failed to comply with its ICWA-related obligations and that this failure was prejudicial. We conditionally affirm the juvenile court's order terminating Mother's parental rights, vacate the court's ICWA finding, and remand the matter for compliance with ICWA and related California law.

## BACKGROUND

Because the sole issue on appeal relates to ICWA compliance, we limit our background discussion accordingly.

### A.    Procedural Summary

Mother never identified J.D.'s father, and he was not a party to the dependency proceedings.  On December 1, 2020, DCFS filed a section 300 petition alleging that Mother's substance abuse (count b-1) and mental and emotional issues (count b-2) prevented her from adequately supervising, protecting, or providing regular care for J.D. pursuant to subdivision (b)(1).  On March 18, 2021, the juvenile court sustained both counts against Mother.  It found removal was necessary and ordered J.D. removed from Mother.

Mother's progress towards reunification was not substantial and the court eventually terminated reunification services.  On December 8, 2023, the court held a contested section 366.26 hearing, found there was no applicable exception to adoption, and terminated Mother's parental rights.

### B.    ICWA Related Proceedings

Because Mother never identified J.D.'s father, no ICWA inquiry was possible of J.D.'s paternal relatives.

3

On November 30, 2020, a DCFS social worker attested that upon asking Mother about J.D.'s possible Indian status, Mother did not give any reason to believe J.D. was or may be an Indian child. On December 7, 2020, Mother filed a parental notification of Indian status form in which she indicated there was no reason to believe J.D. was an Indian child. At a hearing the same day at which Mother was present, the court reviewed Mother's form and concluded it did not have a reason to know J.D. was an Indian child.

On May 24, 2022, the juvenile court ordered DCFS to interview all known relatives as to whether J.D. may be an Indian child. In a last minute information filed September 20, 2022, DCFS reported that based on an interview with maternal grandmother, Mother was 1/32 Cherokee and that maternal grandmother's great-grandmother, Sarah N.D. (maternal great-great-great grandmother), was Cherokee.

On September 21, 2022, the court ordered DCFS to re-interview maternal family members for ICWA purposes, if necessary, and provide notice to the Cherokee tribes, Bureau of Indian Affairs, and the Secretary of the Interior. The record does not indicate DCFS made any further inquiry of maternal relatives relevant to ICWA as ordered by the court. Nor does the record include copies of the letters sent to the tribes, and the clerk of the superior court certified that the letters are missing from the record. However, return receipts (which are in the record) indicate the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians in Oklahoma, and the Cherokee Nation received letters from DCFS in January 2023.

4

On June 22, 2023, DCFS reported to the juvenile court that all three tribes "den[ied] registration or eligibility to register as a member of the tribe[ ]," and attached the tribes' letters to its report. The Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians indicated J.D. was not a tribal member or eligible to become a tribal member.

The letter from the Cherokee Nation, dated February 9, 2023, identified J.D. and Mother by full name, indicated they were child and mother, and listed their birthdates. The letter stated that the Cherokee Nation "has received the above information [i.e., J.D.'s and Mother's names, familial relationship, and birthdates] from your office requesting a determination of tribal eligibility. However, the information remains incomplete and it is impossible to validate or invalidate Cherokee tribal eligibility without more information. [¶] At this time, with the limited information provided, Cherokee Nation can only verify that the names listed above are not registered citizens of the tribe." "Should any additional information be received by you or the court indicating the possibility of tribal heritage, the tribe involved must be notified immediately with that information for further processing." The letter further stated, "This determination is based on the above listed information exactly as provided by you. Any incorrect or omitted family documentation could invalidate this determination." The record does not indicate that DCFS thereafter communicated with the Cherokee Nation.

During a hearing on June 28, 2023, DCFS advised the court that "we received letters back from the various Cherokee . . . tribes indicating [J.D.] is a non-Indian child under [ICWA]." The court found ICWA did not apply. During the December 8, 2023

5

hearing to terminate parental rights, the court again found there was no reason to know J.D. was an Indian child.

## DISCUSSION

### A.     Legal Standard

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings.  [Citations.]  A major purpose of . . . ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' [Citation.]"  (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.)  An " 'Indian child' " is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subds. (a) & (b).)

The juvenile court and DCFS "have an affirmative and continuing duty to inquire whether a child for whom a [section 300] petition . . . has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)  The duty to inquire includes two phases.  The first phase is an initial inquiry (§ 224.2, subds. (a), (b)), which is not at issue in this appeal.  Second, "[i]f the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e); see *In re*

6

*Ricky R.* (2022) 82 Cal.App.5th 671, 678; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

"There is reason to believe a child involved in a proceeding is an Indian child whenever the court [or] social worker . . . has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. . . ." (§ 224.2, subd. (e)(1).) "When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court [or] social worker . . . determine whether there is reason to know a child is an Indian child. . . ." (§ 224.2, subd. (e)(2).) The statute defines further inquiry to include interviewing the parents and extended family members to gather identifying information such as the names of the child's "biological parents, grandparents, and great-grandparents, . . . their current and former addresses, birth dates, [and] places of birth and death," contacting the Bureau of Indian Affairs (BIA) and the State Department of Social Services, and contacting the tribes. (§§ 224.2, subd. (e)(2)(A)-(C), 224.3, subd. (a)(5)(C).) At this stage, "[c]ontact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).) If further inquiry results in a "reason to know" the child in an Indian child, then formal notice requirements under section 224.3 apply. (*In re Ricky R., supra,* 82 Cal.App.5th at p. 679.)

"If the juvenile court finds that 'proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child,' the court may make a finding that ICWA does

not apply to the proceedings, 'subject to reversal based on sufficiency of the evidence.'  (§ 224.2, subd. (i)(2).)"  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999.)

Our division has held that failure to conduct an adequate inquiry under California law implementing ICWA is governed by "[t]he usual test for prejudicial state law error," which is whether " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' "  (*In re S.S.* (2022) 75 Cal.App.5th 575, 581, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)  In particular, we ask whether " 'the probability of obtaining meaningful information is reasonable in the context of ICWA.' "  (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509, quoting *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

## B.    Analysis

Mother and DCFS agree that because J.D. cannot meet the blood quantum requirements for membership in the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians, any inquiry error relating to these tribes is harmless.  However, DCFS acknowledges that the Cherokee Nation "has no blood qu[antum] requirement for membership," and Mother maintains DCFS's inquiry as to the Cherokee Nation was inadequate.

DCFS does not dispute that maternal grandmother provided information sufficient to trigger its duty of further inquiry when she identified maternal great-great-great grandmother as Cherokee Indian and Mother as 1/32 Cherokee Indian.  Section 224.2, subdivision (e)(2)(C) explains that as part of DCFS's further inquiry, "[c]ontact with a tribe shall include sharing information identified by the tribe as necessary for the

8

tribe to make a membership or eligibility determination."
(§ 224.2, subd. (e)(2)(C).)  DCFS acknowledges that membership
in the Cherokee Nation requires the child at issue be a
descendant of an original enrollee who was listed on the Dawes
Rolls.  (See *In re C.B.* (2010) 190 Cal.App.4th 102, 135-136
[discussing child's eligibility for enrollment in Cherokee Nation
based on direct lineage with enrolled member].)  It follows that
DCFS should have provided all available information about
Sarah N.D., a potential original enrollee, to the Cherokee Nation.
This includes re-interviewing maternal grandmother to obtain (if
available) Sarah N.D.'s place of birth, birthdate, and any other
identifying information.  That DCFS failed to do so, especially
after the Cherokee Nation indicated the information DCFS
provided was insufficient for the tribe to determine membership
eligibility, was error.  Thus, substantial evidence does not
support the juvenile court's finding that ICWA does not apply.

DCFS argues that Mother merely "surmises DCFS did not
provide the tribes [maternal grandmother's and maternal great-
great-great grandmother's] name[] and, resultingly, the tribes did
not check their tribal records for th[at] name[]."  However, it is
DCFS and not Mother that is speculating.  The letter from the
Cherokee Nation identifies Mother's and J.D.'s names, their
familial relationship, and their birthdates.  The letter then states
the tribe had insufficient information to determine whether
Mother or J.D. were eligible for tribal membership and that
"[t]his determination is based on the above listed information
exactly as provided by you," which did not include the names of
any additional maternal relatives.

DCFS also argues any inadequacy in its inquiry is
harmless and points to the fact that Mother twice denied Indian

9

ancestry.  But our Legislature has mandated a broader inquiry to include extended family members because they may have superior knowledge than the parents in the dependency proceedings.  (§ 224.2, subds. (b), (e)(2)(A); see, e.g., *In re A.C.* (2022) 75 Cal.App.5th 1009, 1016.)  Here, it appears maternal grandmother did have such additional and superior information. Based upon this record, wherein DCFS had the specific name of a potential original enrollee of the Cherokee Nation but failed to attempt to gather more information about her and to provide her name or any other information about her to the tribe, we cannot say additional inquiry would not bear meaningfully upon the question of whether J.D. is an Indian child.

Mother requests that we order the juvenile court to re-appoint counsel for her for any further ICWA proceedings. Mother is entitled to notice and appointment of counsel for such proceedings.  (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435-1436.)

## DISPOSITION

The order terminating parental rights is conditionally affirmed, and the court's finding that ICWA does not apply is vacated. The matter is remanded to the juvenile court with directions to order DCFS to make further inquiry in compliance with the provisions of ICWA. On remand, Mother shall have counsel reappointed for all ICWA compliance proceedings. If, after proper inquiry, the minor is found not to be an Indian child, the order terminating parental rights shall remain in effect. If, however, the minor is found to be an Indian child as defined by ICWA and the court determines that ICWA applies to this case, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with ICWA.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.

BENDIX, Acting P. J.

11