Filed 10/25/24  In re Nolan B. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re NOLAN B., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | |
| Plaintiff and Respondent, | G064091 |
| v. | (Super. Ct. No. 22DP1108) |
| JUSTIN K., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, June Jee An, Judge. Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

After Nolan B.'s birth, both he and his mother (Mother) tested positive for drugs. Nolan B. was then removed from his parents' custody and declared to be a dependent of the juvenile dependency court. Both Mother and Nolan B.'s father (Father) were offered reunification services, but they stopped visiting him and stopped communicating with Orange County Social Services Agency (SSA). As such, their reunification services were ended, and their parental rights were later terminated.

On appeal, Father challenges the juvenile dependency court's finding that the Indian Child Welfare Act (25 U.S.C. § 1901, et seq.; ICWA) did not apply to Nolan B.'s case. First, he claims there is insufficient evidence to support this finding. Second, he contends SSA failed to adequately document its interviews with Nolan B.'s extended family members. We find no merit to these arguments and affirm the court's order.

FACTS AND PROCEDURAL HISTORY

I.

REMOVAL OF NOLAN B.

Though this appeal solely involves ICWA issues, we briefly address Nolan B.'s removal from the custody of Mother and Father (collectively, the parents).

After Mother gave birth to Nolan B. in August 2022, both tested positive for amphetamines. Nolan B. was taken into protective custody under a protective custody warrant. He was placed with a maternal aunt (the maternal aunt) following his release from the hospital and has remained with her ever since.

SSA filed a petition (the petition) alleging the juvenile dependency court had jurisdiction over Nolan B. under section 300, subdivisions (b)(1) and (g), due to the parents' drug use and criminal history.

2

Neither parent attended the detention hearing on September 1, 2022, and the court ordered Nolan B. to be detained under SSA's protective custody.

A jurisdiction hearing was held in December 2022. The court found most of the allegations in the petition to be true. It declared Nolan B. to be a dependent child of the court and vested custody of him with SSA. Reunification services were ordered for both parents, and the court scheduled a six-month review hearing.

Mother and Father were not married, and they did not appear to have much of a relationship following Nolan B.'s birth. Mother initially participated in services and visited Nolan B. But SSA's later reports state, Mother "has not shown any interest in reunifying with [Nolan B.] or attempted to inquire of any visitation or contact with the child." Similarly, Father initially visited Nolan B. but eventually stopped visiting and stopped communicating with SSA. Father also tested positive for drugs and had numerous no shows for drug testing during this review period.

Neither Mother nor Father attended the six-month hearing in September 2023. The court terminated Father's reunification services but continued Mother's services.

The 12-month reviewing hearing occurred in December 2023. Again, Mother and Father did not attend. The court terminated Mother's services, and it set a hearing to terminate parental rights under section 366.26.

SSA was unable to locate either Mother or Father prior to the section 366.26 hearing in April 2024. The last SSA report prior to the hearing states their "whereabouts are unknown." Neither Mother nor Father attended the section 366.26 hearing. Mother's counsel represented that Mother had moved to Texas but was aware of the hearing. Father's counsel

stated he had not had contact with his client. SSA recommended terminating Mother and Father's parental rights and indicated the maternal aunt sought to adopt Nolan B. After considering the evidence, the court found Nolan B. was likely to be adopted and terminated the parents' parental rights.

## II.

### ICWA FINDING

Mother consistently denied having any Native American heritage. However, when SSA first spoke with Father on August 31, 2022, he stated that "he has some Cherokee Indian from his father's side [(paternal grandfather)]. [Paternal grandfather's] family is from Iowa. He was not sure [which] Cherokee tribe his family belonged to."

Neither parent attended the September 1, 2022 detention hearing. The juvenile dependency court deferred as to ICWA, and it ordered SSA to comply with Welfare and Institutions Code section 224.2, including interviewing extended family members.[1] It also ordered the parties to inform the court "if they subsequently receive information that provides reason to believe or reason to know that [Nolan B.] is an Indian child."

SSA had difficulty contacting Father following the September 1, 2022 detention hearing. Social workers attempted to call him on September 9, 13, 15, 16, and 21, but could not reach him. Nor did Father return SSA's voicemails and text messages.

Though they were unable to reach Father, SSA continued its ICWA inquiry. It submitted an ICWA referral on Nolan B.'s behalf on September 8, 2022. In September 2022, it interviewed Mother and some of Nolan B.'s maternal relatives. Nolan B.'s maternal grandmother and his

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

great maternal aunt denied having Native American ancestry. Mother also denied having Native American ancestry. She did not know whether Father had Native American ancestry, but she gave SSA Father's birthplace, current address, and the paternal grandfather's name.

On September 23, 2022, using resources from the Bureau of Indians Affairs (BIA), SSA contacted the designated agents of the United Keetoowah Band of Cherokee Indians and the Eastern Band of Cherokee Indians by certified mail and the designated agent of the Cherokee Nation by e-mail (collectively, the Cherokee tribes).[2] It gave each tribe all the relevant information it had collected: (1) Mother's full name, address, date of birth, and birthplace, (2) Father's full name, address, date of birth, birthplace, and claimed Cherokee affiliation, and (3) paternal grandfather's full name and possible Cherokee affiliation.

The Cherokee Nation responded that "neither parent nor child are registered as Cherokee Nation tribal citizens, therefore, the child is not an 'Indian child' in relation to the Cherokee Nation as defined in the Federal ICWA. Furthermore, the Cherokee Nation will not be involved based on the information provided." It does not appear either of the remaining Cherokee tribes responded.

Mother and Father both appeared at a hearing on October 13, 2022, and each filed a Parental Notification of Indian Status (ICWA-020 form). Father's ICWA-020 form stated Nolan B "may be a member of, or

---

[2] On appeal, Father and SSA agree these three tribes are the only federally recognized Cherokee tribes. There is also case law stating, "[T]he three federally 'recognized' Cherokee Tribes are the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians of North Carolina, and the United Keetoowah Band of Cherokee Indians of Oklahoma." (*In re C.D.* (2003) 110 Cal.App.4th 214, 226.)

eligible for membership in" a Cherokee tribe located in Iowa.[3] His ICWA-020 also listed paternal grandfather's name and telephone number. At the hearing, Father clarified paternal grandfather was not enrolled in a Cherokee tribe. He explained, "I was just told that I have Cherokee Indian, a real small amount far down in [paternal grandfather's] heritage, but there's no tribal membership or anything." The court deferred as to ICWA and ordered SSA to make an inquiry to the paternal grandfather.

At the December 15, 2022 jurisdiction hearing, the court ordered SSA to "make an initial inquiry of maternal grandfather, mother's living brother, and paternal extended family members (including paternal grandparents and any paternal aunts/uncles). Parents are to provide contact information for extended family members to SSA forthwith. In the next report or an ex parte within 60 days, whichever comes soonest, SSA shall document the results of the inquiries. The parties are to inform the Court if they subsequently receive information that provides reason to know the minor(s) is an Indian child." The court repeated or incorporated portions of this order into subsequent orders issued on March 13, 2023, July 18, 2023, September 14, 2023, October 27, 2023, and December 14, 2023.

SSA interviewed numerous maternal and paternal relatives of Nolan B. SSA's reports indicate that in January 2023, SSA interviewed Mother, Father, the aunt, a maternal great uncle, a paternal aunt, the paternal grandmother, and the paternal grandfather. In March 2023, it interviewed the maternal grandfather and interviewed him again in November 2023. In July 2023, SSA interviewed the maternal grandmother. It also noted that a maternal uncle could not be interviewed because he was

---

[3] On appeal, Father and SSA agree there are no federally recognized Cherokee tribes in Iowa.

deceased. All of the people interviewed denied having Native American heritage. Indeed, Father denied having Native American heritage when interviewed again in January 2023.

As set forth above, SSA lost touch with Mother and Father prior to the section 366.26 hearing on April 12, 2024. At this hearing, the court found ICWA did not apply and terminated Mother and Father's parental rights.

Father appeals the court's order terminating his parental rights. Generally, he argues (1) there is insufficient evidence to support the court's finding that ICWA does not apply, and (2) SSA failed to sufficiently document its ICWA inquiries with Nolan B.'s family members.

DISCUSSION

I.

APPLICABLE LAW

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings." (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) "An 'Indian child' is 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078.)

"The juvenile court and [SSA] have 'an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child.' [Citations.] This continuing duty can be divided into three phases: the initial duty to inquire,

7

the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

In the first phase, "[s]ection 224.2, subdivisions (a), (b), and (c), impose an initial duty of inquiry upon [SSA] and the juvenile court, i.e., to ask all relevant involved persons whether the child may be an Indian child." (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 568.)

The second phase applies when SSA "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) In such cases, SSA "must satisfy three requirements—contacting the extended family, contacting the Bureau of Indian Affairs, and contacting the relevant tribes." (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 569.)

The third phase applies if the inquiries above create a "'*reason to know*'" that the proceeding involves an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 567-568; *In re Q.M.¸supra*, 79 Cal.App.5th at p. 1079.) In the third phase, a formal ICWA notice must be sent to the relevant tribe or tribes. (*In re D.F.*, at pp. 567-568.) "The notice must contain sufficient

information to enable the tribe to 'conduct a meaningful review of its records to determine the child's eligibility for membership.'"[4] (*Id*. at p. 568.)

"A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the Department nor the court had a reason to know or believe the subject child is an Indian child; and (b) the Department fulfilled its duty of inquiry. [Citation.] ""[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.'"" (*In re H.B.* (2023) 92 Cal.App.5th 711, 719.)

## II.

### ADEQUACY OF FURTHER INQUIRY

Father contends SSA's further inquiry was inadequate and, therefore, there is insufficient evidence that ICWA does not apply to Nolan B.'s case. We disagree.

---

[4] "[T]he juvenile court has 'reason to know' a child is an Indian child if one of six circumstances is present: '(1) Any participant in the proceeding . . . informs the court that the child is an Indian child; [¶] (2) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child; [¶] (3) The child . . . gives the court reason to know he or she is an Indian child; [¶] (4) The court is informed that the domicile or residence of the child, [or] the child's parent . . . is on a reservation or in an Alaska Native village; [¶] (5) The court is informed that the child is or has been a ward of a Tribal court; or [¶] (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.'" (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)

"*Further inquiry* as to the possible Indian status of the child includes: (1) interviewing the parents and extended family members to gather required information; (2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and (3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility. [Citations]. Contact with a tribe must include, at a minimum, 'telephone, facsimile, or electronic mail contact to each tribe's designated agent' and include information 'necessary for the tribe to make a membership or eligibility determination.'" (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 566–567, fn. omitted.)

Here, there is substantial evidence to support the juvenile dependency court's finding that ICWA does not apply. Mother denied having any Native American ancestry. Still, SSA interviewed the maternal grandfather, the maternal grandmother, the aunt, and a maternal great uncle. All denied having Native American ancestry.[5]  As to Father, SSA interviewed a paternal aunt, the paternal grandmother, and the paternal grandfather. All denied having Native American ancestry. Further, when SSA interviewed Father again on January 23, 2023, he denied having Native American ancestry.

SSA also contacted the Cherokee tribes in September 2022, and provided the information it had at the time: (1) Mother's name (and former names), address, phone number, birthdate, and place of birth; (2) Father's name, address, birthdate, place of birth, and claimed Cherokee affiliation;

---

[5] SSA also noted a "maternal brother" had passed away in 2014.

and (3) paternal grandfather's name. The Cherokee Nation stated Nolan B. was "not an 'Indian child' in relation to the Cherokee Nation." The two remaining tribes did not respond to the ICWA inquiry despite having more than a year to do so.

Based on this evidence, the court could reasonably conclude that (1) neither SSA nor the court had a reason to know or believe Nolan B. was an Indian child, and (2) SSA had fulfilled its duty of inquiry.

Father contends SSA's further inquiry was inadequate because it only provided paternal grandfather's name when it contacted the Cherokee tribes. It did not contact the Cherokee tribes again after learning the paternal grandfather's address and date of birth and the name of the paternal aunt. Father contends the court erred "[i]n finding ICWA does not apply in this case" because it "relied, in pertinent part, on [SSA's] previous contacts with pertinent tribal representatives."

However, at the further inquiry stage, section 224.2, subdivision (e), only requires that "contact with a tribe 'shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of [ICWA] notices,' and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1133; § 224.2, subd. (e)(2)(C).) "[S]ection 224.2, subdivision (e) does not require that any extensive or particular formal documentation of ICWA inquiry be provided to the tribe." (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1046.)

Here, SSA contacted the Cherokee tribes in September 2022, and provided information concerning Mother and Father as well as paternal grandfather's name. Father has not provided any evidence or argument that

11

the information given the Cherokee tribes was insufficient "'for the tribe to make a membership or eligibility determination'" for purposes of the further inquiry prong. (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 566–567.) Further, there does not appear to have been any reason for SSA to provide additional information to the Cherokee tribes when Father later recanted his claim of Cherokee heritage and all the paternal relatives, including paternal grandfather, denied having Native American ancestry. (See *In re Q.M.*, *supra*, 79 Cal.App.5th at p. 1083 [court found no "'reason to believe' the children were Indian children" where the father claimed Cherokee ancestry at the detention hearing but later disavowed that claim].)

While Father argues SSA was required to provide the names, addresses, and birthdates of paternal family members when contacting the Cherokee tribes, the authority he cites pertains to formal notice given at the *third phase*. (See § 224.3, subd. (a); *In re Mary G.* (2007) 151 Cal.App.4th 184, 208-209; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435; *In re A.W.*, *supra*, 38 Cal.App.5th at p. 665.) This appeal involves the second phase, i.e., the further inquiry stage. The standards for the formal notice given to tribes at the third phase are more rigorous than the inquiries required at the second phase. (*In re M.W.*, *supra*, 49 Cal.App.5th at p. 1047.)

Father also argues SSA failed to contact the State Department of Social Services. However, the relevant statute only requires SSA to contact the "State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or citizen." (§ 224.2, subd. (e)(2)(B).) Here, the record shows SSA already had the contact information for the Cherokee tribes. Thus, it did not need assistance from the State Department of Social Services.

## SSA'S REPORTS

In a dependency case, "[t]he petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken . . . ." (Cal. Rules of Court, rule 5.481(a)(5).) Father contends SSA's report do not contain a sufficiently detailed description of its initial inquiries to Nolan B.'s extended family members. Again, we disagree.

To begin, since Nolan B. was taken into custody under a warrant, the parties dispute whether SSA had a duty to contact Nolan B.'s extended family members during the initial inquiry phase. There is authority holding extended family members only need to be contacted during this phase if a child "'is placed into the temporary custody of a county welfare department pursuant to Section 306.'" (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500, review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-678, review granted July 26, 2023, S280572.) But other courts have found initial inquiries to extended family members are required in all dependency proceedings regardless of how the child entered custody. (See, e.g., *In re C.L.* (2023) 96 Cal.App.5th 377, 386-387; *In re Delila D.* (2023) 93 Cal.App.5th 953, 966, review granted Sept 27, 2023, S281447.) Our Supreme Court is currently reviewing this issue. (*In re Ja.O.*, at p. 672.)

We need not decide this dispute. Assuming SSA had a duty to contact Nolan B.'s extended family members, we find its reports adequately detailed these contacts. SSA's reports included charts listing (1) the name of the contact; (2) their relationship to the child; (3) the date of the inquiry; (4) whether the person contacted claimed Native American ancestry; (5) the specific tribal identification; (6) the date of referral to the ICWA unit; and

13

(7) the response of the ICWA unit. Copies of two of these charts are produced below without the identifying information for anonymity purposes.

Chart from SSA's report datd December 13, 2023:

**INDIAN CHILD WELFARE ACT STATUS**

| Name | Relationship to Child | Date of Inquiry | Native American Ancestry | Tribal Identification | Date of ICWA Unit Referral | ICWA Unit Response |
|---|---|---|---|---|---|---|
| | Mother | 01/23/2023 | Denied | NA | NA | NA |
| | Maternal great aunt | 01/23/2023 | Denied | NA | NA | NA |
| | Presumed Father | 01/23/2023 | Denied | N/A | N/A | N/A |
| | Maternal Great Uncle | 01/24/2023 | Denied | NA | NA | NA |
| | Great Maternal Aunt | 01/23/2023 | Denied | NA | NA | NA |
| | Paternal Aunt | 01/24/2023 | Denied | N/A | N/A | N/A |
| | Paternal Grandparents | 01/24/2023 | Denied | N/A | N/A | N/A |
| | Maternal Uncle | Deceased per the Maternal Grandmother inquiry date October 29, 2023 | | | | |
| | Maternal Grandfather | November 30, 2023 | Denied American Indian | | | |

14

Chart from report dated August 4, 2023:

**INDIAN CHILD WELFARE ACT STATUS**

| Name | Relationship to Child(ren) | Date of Inquiry | Native American Ancestry (Yes, No, Maybe, Unknown) | Tribal Identification | Date of ICWA Unit Referral | ICWA Unit Response |
|---|---|---|---|---|---|---|
| [redacted] | Maternal Grandfather | March 13, 2023 | DENIED | N/A | | |
| [redacted] | Maternal Brother | Deceased on October 6, 2014 | | | | |
| [redacted] | Maternal great aunt | January 23, 2023 | Denied | | | |
| [redacted] | Maternal great uncle | January 23, 2023 | Denied | | | |
| [redacted] | Maternal Grandmother | July 19, 2023 | Denied | | | |

These charts show all the relatives of Nolan B. that SSA contacted. All denied having Native American ancestry.

Father does not contend SSA failed to contact any relatives. Rather, he only argues that SSA's reports do not state whether the relatives contacted "were, in so denying [Native American heritage], responding to [a] general question about such ancestry of more specific questions about any Cherokee or Iowa tribe Father had previously mentioned . . . ." Thus, Father maintains, "[t]here [are] no such details reported about Father's family denying Native American ancestry." Not so. SSA's charts contain a column for "Native American Ancestry" and a separate column for "Tribal Identification." Thus, the most reasonable interpretation of these charts is that SSA asked Nolan B.'s relatives about Native American ancestry generally. Since they all denied such ancestry, an "N/A" was listed under "Tribal Identification."

15

Given the context of this case, in which all interviewed family members denied having Native American ancestry, SSA was not required to include any further details in its reports.

DISPOSITION

The juvenile dependency court's order is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.