Filed 1/31/25  In re E.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re E.R., a Person Coming Under the Juvenile Court Law. | C101563 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>A.R.,<br><br>    Defendant and Appellant. | (Super. Ct. No. 24JV-32766-01) |

Appellant A.R., mother of the minor, appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; statutory section citations that follow are to the Welfare and Institutions Code unless otherwise stated.)  She contends the Shasta County Health and Human

1

Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We agree that, despite the significant efforts undertaken to comply with the ICWA, we must conditionally reverse the orders of the juvenile court and remand for further ICWA compliance.

## FACTS AND HISTORY OF THE PROCEEDINGS

Because the issue on appeal is limited to ICWA compliance, we do not need to provide a detailed recitation of the underlying facts and procedure.

On January 9, 2024, the Agency filed a section 300 petition on behalf of then one-year-old E.R., based on the parents' domestic violence, and the parents' admission that they were guilty of severe physical abuse, torture, neglect and starvation of the minor's older sibling which, collectively, had resulted in the sibling's death. The Agency reported that mother might be affiliated with the Saginaw Chippewa tribe and father, although adopted, may be affiliated with the Paiute-Shoshone tribe.

On January 10, 2024, father completed a Notification of Indian Status ICWA-020 form (ICWA-020 form) that reported he or his relatives could be affiliated with the Wintu or Paiute-Shoshone tribes. Mother's ICWA-020 form reflected no known Indian ancestry.

The detention hearing was held on January 10, 2024. Various maternal and paternal relatives attended the hearing. At the hearing, mother said she may have Indian ancestry, but that it was a small percentage and not enough to qualify for anything. She said her aunt would have more information, but she was not sure of her aunt's legal name. She only knew her by her nickname "Chita." A maternal relative in the courtroom provided the aunt's legal name – M.B. Father said he was 1/16[th] Wintu, which he said was not enough to qualify for any benefits. He noted he had been adopted under a different name and gave both his birth and adoptive names (J.F. and R.R., respectively).

2

Father's adoptive parents were present at the hearing and confirmed that they had been told of father's Wintu heritage, which they assumed was through his biological mother.

Various maternal and paternal relatives were also present in court on February 20, 2024, again confirming possible Indian ancestry through the above-mentioned tribes. The juvenile court found reason to believe the ICWA may apply and that further inquiry was required. Both parents were provided with ICWA-030 notice forms upon which to supply what familial information they had and were instructed to work with their relatives to provide the information. They completed the forms and provided the forms to the Agency. Father corrected his claim of Wintu ancestry to that of Wintun ancestry.

The jurisdiction/disposition hearing was held on March 5, 2024. The Agency reported in the disposition report that it had completed an initial family finding for the maternal and paternal relatives and had identified 57 paternal relatives and 103 maternal relatives. It also reported that mother had identified her sister, V.P., in addition to her aunt, as a relative who would likely have more information about her Indian ancestry. Various paternal relatives attended the jurisdiction/disposition hearing. The juvenile court sustained the allegations in the petition, adjudged the minor a dependent child of the court, ordered the minor removed from parental custody, bypassed parents for reunification services and set a section 366.26 hearing.

The Agency filed an ICWA addendum report on June 21, 2024. The Agency reported it had identified 37 known maternal and paternal relatives and had sent ICWA inquiries to each of them. It provided a list of those relatives in an attachment. Mother's aunt, identified in court as M.B., is not on the list. Mother's sister, V.P., however, does appear on the list. The addendum also attached the Agency's e-mail and letter correspondence with the relevant tribes, which were dated June 20, 2024. The information provided to the tribes included the names and dates of birth for mother, the maternal grandmother, and the maternal grandmother's parents, and for father, the paternal grandfather, the paternal grandfather's parents, the paternal grandmother, and the

paternal grandmother's parents. The Agency used father's adoptive name (and family), noting that father was adopted and representing that his biological family "is unknown." Three tribes had responded to the Agency that the minor was not eligible for enrollment. No responses had been received from the remaining tribes or the Bureau of Indian Affairs.

The section 366.26 hearing was held on July 2, 2024. Various relatives were present, as were the parents. The juvenile court found the ICWA does not apply, and then terminated parental rights and selected adoption as the permanent plan.

## DISCUSSION

Mother contends the Agency and juvenile court failed to comply with the duty of initial inquiry as to the minor's Indian ancestry because the record does not reflect that the Agency contacted the maternal relative(s) identified as likely to have ICWA information and failed to provide father's birth name to the tribes. She also complains that the Agency did not include the familial information for relatives who had appeared in court and were, therefore, readily available to provide their information. Despite the extensive ICWA inquiry that appears from the record to already have been undertaken in this case, we are compelled to remand for the Agency to complete further duties under the ICWA.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

4

The juvenile court and the Department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

Section 224.2 creates three distinct duties regarding the ICWA in dependency proceedings.  "First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id*., subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; see In re *Dezi C.* (2024) 16 Cal.5th 1112, 1147-1148.)  Not every error by an agency or department in discharging its duties under section 224.2 will undermine the court's ICWA finding, but the court's ability to exercise discretion in this regard is dependent on adequate record development by the Department.  " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.  However, the less developed the record, the more limited that discretion necessarily becomes." ' (*In re Kenneth D.*

[(2024) 16 Cal.5th] at pp. 1101-1102; see also *In re H.B.* (2023) 92 Cal.App.5th 711, 721.)" (*Dezi C.*, at p. 1141.)

Regarding the initial inquiry, "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) "Extended family member[s]" include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c); *In re K.H.* (2022) 84 Cal.App.5th 566, 597.)

We agree with mother's assertion that the Agency did not fully satisfy its duty of inquiry.

First, the Agency in this case had identified 57 paternal relatives and 103 maternal relatives. Although mother does not assert that the Agency was required to inquire about possible Indian ancestry from each of these 160 relatives, she notes that the record does not reflect that the Agency inquired of several relatives who were specifically identified as likely to have additional ICWA information. For example, the maternal aunt, M.B., was specifically identified in court as the relative who would have the information about mother's affiliation with the Saginaw Chippewa tribe. Yet, there is no documentation in the record that the Agency ever contacted, or attempted to contact, this relative. We agree that, at the very least, the Agency should have contacted (and/or documented its attempts to contact) the maternal aunt, M.B., about the minor's possible Indian ancestry.

Likewise, mother identified her sister, V.P., as someone who might have more information about her Indian ancestry. Although mother argues the Agency "did not seem to include" V.P. in those relatives to which it sent ICWA inquiry, the Agency's addendum report reflects that it did send an ICWA inquiry letter to V.P. on or around February 6, 2024. The Agency did not report that it made any additional attempts to

6

contact V.P. about the ICWA but we note that V.P. did appear in court shortly thereafter. V.P. was present at the February 20, 2024, hearing, when the juvenile court found reason to believe the ICWA may apply and directed further inquiry be made. The record does not, however, reflect whether V.P. was specifically asked about possible Indian ancestry on that date. There is no hard and fast rule on what efforts are enough but whatever the level of inquiry, it has to be sufficient to allow the juvenile court to decide that the efforts were reasonable. We decline to define the minimum efforts necessary to be considered reasonable. On remand, the juvenile court should consider whether, under these circumstances, additional efforts, or documentation regarding efforts, to contact V.P. about possible Indian ancestry must be made.

The Agency also failed to fully comply with the second duty of inquiry. Although the Agency and parents reported that both parents had completed ICWA-030 forms setting forth their familial information and provided those forms to the Agency, the completed ICWA-030 forms were not made part of the record. Thus, neither this court, nor the juvenile court, is privy to the familial information parents provided to the Agency in order to assess whether it passed to the tribes the relevant known information.

However, the record affirmatively reflects that the Agency did *not* provide the tribes with father's birth name – which was provided to the Agency at the detention hearing. Instead, the Agency mistakenly reported to the tribes that father's birth name was unknown. This omission is particularly significant since father's Indian ancestry was known to flow from his biological family, not his adoptive family. Thus, this error by omission in the information provided to the tribes resulted in a failure of substantial evidence to support the finding that the Agency complied with its duty under the ICWA and the ICWA does not apply. Accordingly, remand for further ICWA compliance is required.

DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of the ICWA. If the juvenile court thereafter finds the further inquiry was proper and adequate, and due diligence has been conducted, and concludes the ICWA does not apply, the orders shall be reinstated. If, however, the juvenile court concludes the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions.

_____
HULL, Acting P. J.

We concur:

_____
RENNER, J.

_____
KRAUSE, J.