Filed 6/25/25  In re H.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | C102750 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, Plaintiff and Respondent, v. A.M. et al., Defendants and Appellants. | (Super. Ct. No. JD242595) |

Appellants A.M. (mother) and J.D. (father) (collectively parents) appeal the juvenile court's orders terminating their parental rights to minor H.M.  They argue respondent Sacramento County Department of Child, Family, and Adult Services (Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related

1

California law to determine whether H.M. has potential Native American heritage.[1]  The Department filed a statement of nonopposition, conceding that the matter should be remanded for further ICWA review.  We accept the Department's concession.  We shall conditionally reverse the order terminating parental rights, vacate the juvenile court's ICWA findings, and remand for further ICWA review and new findings.

## I. BACKGROUND

In July 2023, two-month-old H.M., who had gained less than a pound since her birth in May 2023, was taken into protective custody after she was found to have multiple physical injuries, including several rib fractures and extremity fractures that were in different stages of healing.[2]  The parents could not explain H.M.'s injuries, although they said perhaps a pack of baby wipes had fallen on H.M. while she was in her crib.

In August 2023, the Department filed a juvenile dependency petition under Welfare and Institutions Code section 300, subdivisions (a) [infliction of nonaccidental injury], (b)(1) [substantial risk of physical harm due to failure to supervise, protect, or provide with adequate food or medical treatment], and (e) [under age five and suffered severe physical abuse by parent or someone known to parent].[3]  According to the petition, a child abuse expert found H.M.'s extensive physical injuries to be consistent with strangulation and squeezing, and the parents' explanations were not consistent with the injuries.

---

[1] Father adopts and joins in mother's arguments that the Department and the juvenile court failed to comply with the ICWA.

[2] H.M. had two left rib fractures, two right rib fractures, a right back posterior fracture, a left humorous/upper arm displaced fracture, a left forearm facture, a newer right forearm fracture, an acute corner left tibia fracture, and a right leg sub-acute fracture.  She also had facial bruising under her eyes and jaw, bleeding in the white part of her eye, and was later diagnosed with failure to thrive.

[3] Further undesignated statutory references are to the Welfare and Institutions Code.

The Department filed an ICWA-010(A) form stating it had reason to believe H.M. is or may be an Indian child within the meaning of the ICWA as the parents had indicated H.M. may have tribal ancestry in the Cherokee Nation, the Eastern Band of Cherokees, or the United Keetoowah Band of Cherokees.

The Department recommended the juvenile court detain H.M. in foster care and find that there was a reason to believe H.M. may be an Indian child, requiring further ICWA inquiry. Mother had claimed Native American ancestry with the Mohegan tribe through maternal great grandmother, whose last name she did not know. Both father and his own father (paternal grandfather) had reported that they had Native American ancestry, although neither specified a particular tribe and both stated their lineage was less than 50 percent and that they were not registered or eligible to register. Paternal grandmother denied having any Native American ancestry.

Based on these disclosures, in August 2023, the Department emailed or attempted to email the following 11 tribes to inquire about potential Native American ancestry: (1) Cherokee Nation Tahlequah, Oklahoma; (2) Eastern Band of Cherokee Indians; (3) United Keetoowah Band of Cherokee Indians in Oklahoma; (4) Mohegan Tribes of Indians of Connecticut; (5) Apache Tribe of Oklahoma; (6) Fort Sill Apache Tribe of Oklahoma; (7) Mescalero Apache Tribe of the Mescalero Reservation, New Mexico; (8) Pueblo of Picuris, New Mexico; (9) Tonto Apache Tribe of Arizona; (10) White Mountain Apache Tribe of the Fort Apache Reservation, Arizona; and (11) the Yavapai Apache Nation of the Camp Verde Indian Reservation, Arizona. The Department called both the Mescalero Apache Tribe and the San Carlos Apache Tribe of the San Carlos Reservation in Arizona, which each informed the Department that ICWA inquiries had to be made via mail. The Mescalero Apache Tribe later responded to the Department that father and paternal grandfather were not registered members and were not likely eligible for membership as there were no registered members with their last name. The Mohegan Tribe of Indians emailed the Department and requested a return call.

At the August 2023 detention hearing, the juvenile court detained H.M. in foster care and ordered visitation and services for the parents. The juvenile court also found there was a reason to believe H.M. may be an Indian child. It directed the Department to make further ICWA inquiries and ordered mother and father to complete and submit a Parental Notification of Indian Status form (ICWA-020). Father's ICWA-020 form indicated he had Mohegan, Apache, and Cherokee ancestry. Mother's ICWA-020 stated she was a member of, or may be eligible for membership in, the Mohegan tribe.

A jurisdiction/disposition report contained the same information regarding possible Mohegan ancestry on mother's side and possible Mohegan, Apache, and Cherokee ancestry on father's side, and stated that the ICWA may apply. Both mother and father informed the social worker that they were not enrolled members and might not be eligible for tribal membership. The parents generally denied the abuse allegations, claiming they did not know how H.M. was injured and that they had fed her properly.

A September 2023 ICWA compliance report noted mother had provided the Department with the maternal great grandmother's full name, and that she was associated with the Stockbridge Munsee Community in Milwaukee, Wisconsin. The report included the names, birth dates and places (if known), and possible tribal affiliations of the parents, maternal grandmother, maternal great grandmother, paternal grandfather, and paternal great grandfather. The Department had contacted the Bureau of Indian Affairs to obtain tribal contact information for 14 tribes in total and its report listed the designated agents and contact information for each tribe. The Department attempted to contact various tribes via email, certified mail, or by telephone. In addition to the 12 previously identified tribes, the Department also inquired with the Stockbridge Munsee Community in Wisconsin (through which mother claimed Indian ancestry), and the Jicarilla Apache Nation in New Mexico. The Department was still awaiting responses from the Mohegan Tribe of Indians of Connecticut and the Jicarilla Apache Nation, and the Stockbridge Munsee Community and the Cherokee Nation had each responded that H.M. was not an

enrolled member and was not eligible for enrollment in the respective tribes. The report, however, did not specifically describe contact efforts or responses for the remaining identified tribes. The Department continued to recommend the juvenile court find there was a reason to believe H.M. was an Indian child and order further inquiry efforts.

In September 2023, the Department recommended the juvenile court sustain the petition, but requested additional time to determine whether providing services to the parents would benefit H.M. The Department also recommended the court find that H.M. may be an Indian child and that notice of the proceedings and the right of the tribe to intervene was provided by law. In October 2023, the Department recommended the juvenile court declare H.M. a dependent, remove her from parents' custody and care with a plan of adoption, and deny parents reunification services under section 361.5. The proposed ICWA finding that H.M. may be an Indian child remained unchanged.

An October 2023 ICWA compliance report again noted that H.M. may be an Indian child. The Department had received a response from the Mohegan Tribe of Indians of Connecticut indicating H.M. and her parents were not members of the tribe. The Department continued to await a response from the Jicarilla Apache Nation tribe. The Department nonetheless recommended that the juvenile court find: (1) there was no reason to believe or reason to know that H.M. was an Indian child; (2) the ICWA did not apply; and (3) the Department had completed further inquiry as required by section 224.2 and had exercised due diligence in its ICWA efforts.

The court set the matter for an ICWA compliance hearing in January 2024 and a contested jurisdiction/disposition hearing later that month. Prior to the contested hearing, the Department filed a report noting H.M. was gaining weight and had suffered no further physical injuries while in foster care. Both hearings were continued to March 2024.

The Department continued to recommend the juvenile court sustain the petition allegations, remove H.M. from the parents' care, and bypass them for services. The

Department later informed the court that the parents had recently been arrested following a child abuse investigation.

The Department submitted an updated ICWA compliance report in June 2024. After multiple additional inquiries to the Jicarilla Apache Nation, the Department was still awaiting a response regarding whether H.M. was a member of or eligible for membership in the tribe. The Department recommended the juvenile court find that although there was reason to believe H.M. was an Indian child, based on the Department's further inquiries and due diligence, there was no reason to know H.M. was an Indian child.

At a hearing in June 2024, the juvenile court found the petition allegations true, declared H.M. a dependent child, removed her from parents' physical custody, and bypassed parents for reunification services. The court set a section 366.26 hearing in October 2024 and continued the ICWA compliance hearing to July 2024.

In a July 2024 ICWA compliance report, the Department described multiple attempts to contact the Jicarilla Apache Nation by phone in June and July, and reported that the tribe had eventually responded that H.M. was not an enrolled member and not a descendent of the tribe. The Department continued to recommend the juvenile court find the Department had exercised due diligence during its ICWA inquiry and that the ICWA did not apply.

At the ICWA compliance hearing in July 2024, the juvenile court found the Department had completed further ICWA inquiries under section 224.2, subdivision (e), that it had exercised due diligence, and that there was no reason to believe H.M. was an Indian child. The court therefore found the ICWA did not apply.

A selection and implementation report restated the juvenile court's prior finding that the ICWA did not apply and recommended H.M. be adopted by her confidential caregiver. The matter was set for a contested section 366.26 hearing in December 2024.

Mother and father objected to the termination of parental rights and requested H.M. be placed with a maternal great uncle who had recently come forward as a potential relative placement. Counsel for H.M. agreed with the parents' position. The Department recommended the juvenile court terminate parental rights and free H.M. for adoption by her current confidential caregiver rather than placing her with the maternal great uncle.

A December 2024 ICWA compliance report informed the juvenile court that the Department had asked the maternal great uncle about possible maternal Indian ancestry; he responded that he was unaware of any Indian ancestry and had minimal contact with the maternal side of the family. The Department continued to recommend the court find the ICWA did not apply.

At the contested section 366.26 hearing on December 10, 2024, the maternal great uncle and the confidential caregiver testified. The juvenile court took the matter under submission and reaffirmed its previous finding that the ICWA did not apply. The court ultimately found that placing H.M. with the maternal great uncle was not in her best interest, and it terminated mother's and father's parental rights and selected adoption as H.M.'s permanent plan. Mother and father timely appealed.

## II. DISCUSSION

The parties agree, as do we, that insufficient evidence supports the juvenile court's findings that the ICWA did not apply and that the court abused its discretion in determining the Department's ICWA inquiry was diligent, adequate, and proper. Conditional reversal of the order terminating mother's and father's parental rights to allow for further ICWA review and new findings is therefore required.

A.      *Applicable Law*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children

7

who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA . . .), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquiry whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125; see § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

On appeal, we review ICWA findings and orders for substantial evidence. (*In re D.S., supra*, 46 Cal.App.5th at p. 1051.) A finding that ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) The juvenile court's "fact-specific determination that an inquiry is adequate, proper, and duly diligent

is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C., supra*, 16 Cal.5th at p. 1141.)

B.      *Analysis*

Here, the Department emailed or attempted to contact 14 tribes based on the disclosures by mother, father, maternal grandmother, and paternal grandfather that mother had Indian ancestry with the Mohegan tribe as well as the Stockbridge Munsee Community and that father had Indian ancestry with the Mohegan, Apache, and Cherokee tribes. While the Department received responses from at least five tribes stating H.M. was not a member and was not eligible for membership in those tribes, the record is devoid of information regarding the precise nature of the inquiries or information sent to the tribes, and what responses, if any, the Department received from the remaining tribes regarding H.M.'s potential Indian heritage.

Having found that there was a reason to believe H.M. may be an Indian child, the Department and the juvenile court had a continuing duty of further inquiry under section 224.2, and, as the parties agree, the further ICWA inquiry efforts fell short here. Thus, we need not belabor the point as the Department does not dispute the parents' claims. Rather, it concedes the record on appeal does not provide sufficient information to demonstrate the Department conducted the requisite further ICWA inquiries of the identified tribes, providing all pertinent familial information to allow the tribes to determine whether H.M. is or may be an Indian child.

Given the Department's concession, we will conditionally reverse the order terminating parental rights, vacate the juvenile court's ICWA findings, and remand for further compliance with the ICWA.

### III. DISPOSITION

The juvenile court's orders terminating parental rights are conditionally reversed. On limited remand, the juvenile court shall order the Department to comply with the inquiry and notice provisions of the ICWA, as well as the requirements of sections 224.2

9

and 224.3 and the documentation provisions of the California Rules of Court, rule 5.481(a)(5).  If the juvenile court thereafter finds a further inquiry was proper and adequate, due diligence has been conducted, and the ICWA does not apply, the orders terminating parental rights shall be reinstated.  If, however, the juvenile court concludes the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions.


/S/

_____

RENNER, J.



We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

DUARTE, J.


10