Filed 9/24/25  In re B.W. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

|  |  |
|---|---|
| In re B.W. et al., Persons Coming Under the Juvenile Court Law. | |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.D.,<br><br>Defendant and Appellant. | C102805<br><br>(Super. Ct. Nos. 53-005389 & 53-005390) |

Appellant B.D. (mother), appeals the juvenile court's determination that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1902 et seq.) did not apply to minors Bry.D. and Bri.W. (collectively, the minors), claiming that the county social services departments[1] failed to make a thorough inquiry to an extended family member.  We will affirm.

---

[1]     This case involves the social service departments of three counties:  the Sacramento County Department of Child, Family and Adult Services, the El Dorado

1

FACTUAL AND PROCEDURAL BACKGROUND

In August 2020, the Department removed the minors and placed them in the home of an extended family member as part of a safety plan. The minors reported that mother slept a lot, they did not have enough food to eat, and they had to take care of themselves.

In September 2020, mother entered into an informal supervision agreement with the Department related to her ongoing substance abuse. She suffered from depression, post-traumatic stress disorder, major depressive disorder, and reported a history of drug use. The agreement required that she participate in parenting and substance abuse prevention classes, drug testing, mental health treatment, and counseling. Mother violated the agreement by failing to take drug tests during August and November 2020, and she also tested positive for drugs four separate times in August, September, and December 2020. The Department reported that mother would sleep for hours and leave the minors unattended. She admitted to a history of drug use and that she failed to test for drugs because of her ongoing mental health issues.

In December 2020, the Department filed petitions in the Sacramento County Juvenile Court alleging the minors came under the provisions of the Welfare and Institutions Code[2] section 300, subdivision (b)(1), due to mother's reported drug use and inattention to the minors. At the first hearing, the juvenile court found that the Department had established a prima facie case, indicating that the minors' care and protection required removal from parental custody and placement under the supervision of the juvenile court. The juvenile court ordered that mother have visitation with the minors.

---

County Health and Human Services, and the Placer County Department of Health and Human Services. The three agencies are collectively referred to as the Department.

[2]     Further undesignated section references are to the Welfare and Institutions Code.

In January 2021, the Sacramento County Juvenile Court sustained the allegations in the petitions, and ordered the case transferred to El Dorado County because mother lived there. The minors remained in Sacramento County. Over the next two months, mother completed three drug abuse and mental health courses and had supervised visits that reportedly went well.

In March 2021, the El Dorado County Juvenile Court held a disposition hearing and found that the minors' care and protection required them to be removed from mother and placed under the supervision of the Department. The juvenile court ordered visitation and reunification services for mother. The juvenile court also found that ICWA did not apply to the case.

In August 2021, the minors' father died from brain cancer. Mother began "slipping back into her old patterns of not taking care of herself and using substances to cope with her mental health." The Department dropped her from her parenting, drug recovery, and mental health classes for nonattendance. In September 2021, the El Dorado County Juvenile Court found mother had failed to address the conditions that made it detrimental for the minors to return to her care, but ordered the Department to provide her and the minors with additional reunification services and monitored visitation because mother regularly visited the minors, and the observing social worker indicated the minors were bonded to mother.

Through January 2022, the minors stayed with a nonrelated extended family member in Sacramento while visiting with mother regularly. Mother would stay at the extended family member's house from Friday through Sunday to visit with the minors. Mother was working full time, sober, regularly testing negative for alcohol and drugs, working on her mental health, and maintaining suitable housing for the minors. The Department recommended the minors be returned to mother's care.

At the 12-month review hearing, the El Dorado County Juvenile Court found that mother had completed reunification services and that it was no longer detrimental to the

minors to be placed in mother's care. The juvenile court also ordered family maintenance services.

In March 2022, mother admitted she was drinking up to a six-pack of beer a day to deal with certain life stressors, but had enrolled in counseling while attending parenting classes, maintaining her medication, and testing negative for drugs. The Department recommended additional family maintenance but expressed concern with mother's alcohol use and poor decision-making.

In June 2022, the minors were living with mother in Placer County. The Department reported they were doing well, in school, attending counseling, and in good health. The El Dorado County Juvenile Court conducted an in-home review and ordered further family maintenance services.

In October 2022, a social worker discovered two adults sleeping in mother's home during a home visit. Neighbors and the minors reported they were living in the home, although mother explained they were homeless and just cleaning up. Mother's sister was also living in the home around this time, and the Department reported she assaulted mother, used drugs in the home, and took mother's car without returning it.

By December 2022, mother began having difficulties again. Her health was suffering, and she was prescribed an opiate for pain. She also began to fail to regularly communicate with her social worker. The minors were still in good health, attending school, and developmentally normal, but school officials reported the minors were chronically absent from school. The Department reported it was concerned about mother's decision-making, failure to attend drug testing, unhealthy relationships, and creation of a negative environment for the minors.

In December 2022, the El Dorado County Juvenile Court transferred the case to Placer County, where mother and the minors were now living. The Department reported mother's home was close to a park, library, and swimming pool, and that the minors were bonded and responding well to care from mother.

4

In February 2023, mother tested positive for methamphetamine. Mother and her social worker created a safety plan for the minors.

In April 2023, police arrested mother for driving under the influence and fleeing the scene of an accident. Mother continued to struggle; she missed alcohol and drug tests; failed to follow up with her social worker; had trouble getting up in the morning; and struggled with getting the minors to school and their appointments. The Department reported the minors enjoyed living with mother. In June 2023, mother tested positive for alcohol and fentanyl. The Department reported mother allowed a boyfriend with a history of drug use and another male to stay in the home. After mother failed a second alcohol and drug test, the Department removed the minors and placed them in foster care. The Department also filed a petition in the Placer County Juvenile Court alleging the minors came within the provisions of section 387 because of mother's drug use, not attending to the minors' needs, and sleeping for large portions of the day.

In June 2023, the Placer County Juvenile Court held a hearing and found that the minors should be removed from mother's care but ordered monitored visitations with mother twice a week. Mother participated in an outpatient drug program but was discharged for missing appointments and failing to communicate with her counselor. She also tested positive for cocaine, fentanyl, and norfentanyl. Mother continued to miss scheduled drug tests without good cause.

In August 2023, the Placer County Juvenile Court placed the minors in a confidential foster home because no relatives were available to care for them. The minors maintained regular phone contact with mother. A visitation worker requested that visitations take place at the Department's office because of mother's negative behaviors, including bringing a boyfriend to a visit without permission. The juvenile court held a jurisdictional hearing on the section 300 petition and found the allegations true in the petition after mother withdrew her request for a contested hearing. The juvenile court found, despite reasonable efforts, that it was necessary to remove the minors from mother

5

and place them in foster care. The juvenile court ordered supervised visitation three times per month. The juvenile court further found it necessary to set a section 366.26 hearing to determine a permanent placement for the minors.

In November 2023, the minors reported that they did not want to be adopted and wanted continued contact with mother. The Department reported they had adjusted to their foster home and on-going visitation with mother. Mother filed a petition under section 388 requesting that the Placer County Juvenile Court return the minors or, alternatively, give the family reunification services. The juvenile court found returning the minors would create a substantial risk of detriment to the safety and protection or physical or emotional well-being of the children, but approved mother's petition and gave her additional family reunification services.

After engaging with services from December 2023 to January 2024, mother's "engagement with services and visits . . . significantly decreased." Mother did not respond to communications from the Department in March or April 2024, and her visits with the minors became less frequent. In May 2024, mother moved to Kentucky with a former boyfriend that the minors did not like. She continued participating in services and supervised phone visits with the minors. Mother's social worker concluded that mother had a "pattern of being very inconsistent with services," where she would "stop engaging or attending . . . services entirely, and then [want] to engage again." The Department expressed concern that mother was entering into an unhealthy relationship without an awareness of its negative impact on the minors. It further concluded mother is "out of time regarding unification and the [minors] cannot be safely returned to her to relocate to another state."

In June 2024, the Department recommended terminating family reunification services and setting another section 366.26 hearing. In July 2024, the Placer County Juvenile Court held a hearing and found, despite reasonable reunification services,

6

mother was not effective at removing the risk of harm to the minors. It terminated services and set a section 366.26 hearing.

The Department's section 366.26 report indicated the minors wished to remain with their caretakers if they could not reunite with mother, but the caretakers did not wish to adopt the minors. The Department suggested the minors be placed in a legal guardianship under which the caretakers would provide a permanent home for the minors.

The Placer County Juvenile Court held a section 366.26 hearing in December 2024. Mother argued for the case to remain open so that she could have a chance at reunification. The juvenile court found that placing the minors in a legal guardianship was in the best interests of the minors, with twice-monthly visitation and weekly phone calls with mother.

Mother filed a timely notice of appeal.

*Summary of ICWA Proceedings*

Mother and father denied having any Native American heritage in October and November 2020, respectively. Father also filed a Parental Notification of Indian Status, ICWA-020 form, denying Native American ancestry. In December 2020, the Sacramento County Juvenile Court found ICWA did not apply. In January and March 2021, the El Dorado County Juvenile Court also found no reason to believe ICWA applied.

In January 2023, paternal grandmother, R.W.[3] passed away. In May 2023, the Department asked mother if she had any Native American ancestry, which mother again denied. In June 2023, the Placer County Juvenile Court asked mother if she had any Native American ancestry, and she again denied any Native American ancestry on either

---

[3] To protect their privacy, we will refer to this individual and other included family members by their initials. (Cal. Rules of Court, rule 8.90(b)(10) & (11).) Further rule references are to the California Rules of Court.

side of her family. The juvenile court stated: "On the issue of the Indian Child Welfare Act, or ICWA, inquiry and notice requirements, the Court asked all family members present, including the children and mother, whether they knew or had reason to know that either of the children may be an Indian child. Based upon the responses to that request, the Court is directing the department to make further inquiries as to the minors' status."

In July 2023, mother again denied any Native American ancestry and stated that there were no other family members who could provide information regarding Native American ancestry. Mother indicated she did not have contact with her deceased husband's side of the family. The Department attempted to contact D.S., the paternal grandfather, by phone, but his number was disconnected. The Department also sent a message via social media to D.S. to discuss whether he was aware of any Native American ancestry. The Department did not receive a reply from D.S. Later that month, the Department contacted A.W., a possible relative of the minors, via social media. The Department did not receive a response from A.W.

In August 2023, the Placer County Juvenile Court found ICWA did not apply to the case. In May 2024, the Department asked a paternal uncle, D.W., if he had any Native American ancestry, to which he responded that he was not aware of any Native American ancestry in his family. In July 2024, the juvenile court again found ICWA did not apply to the case.

DISCUSSION

Despite acknowledging "a good faith effort" by the Department to comply with ICWA, mother argues the Department failed to comply with ICWA because it did not contact a known relative—paternal grandfather, D.S. We disagree.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children

8

who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; [Citation]), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); § 224.2, subd. (a); rule 5.481(a).)

Section 224.2 creates three distinct duties regarding the ICWA in dependency proceedings. "First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

Due to changes in California law, social service agencies now have broader duties of inquiry and documentation (§ 224.2, subd. (b); rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when an agency fails to discharge those duties. Section 224.2, subdivision (e), only requires further inquiry when the Department "has 'reason to believe' that an Indian child is involved." (*Dezi C., supra,* 16 Cal.5th at p. 1132.) We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961; *Dezi C.,* at p. 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation]

9

subject to a deferential standard of review." (*Dezi C.*, at p. 1141.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.) The California Supreme Court has recently held that "an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.,* at p. 1136.)

Here, the juvenile court had " ' "broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent" ' " because a well-developed record exists. (*Dezi C., supra*, 16 Cal. 5th at p. 1141.) Moreover, there was substantial evidence upon which the juvenile court could base its finding that the Department conducted an appropriate and sufficient further inquiry and that the ICWA did not apply. Mother does not dispute that further inquiry was unnecessary as to mother and her extended relatives. Mother's challenge is solely as to the Department's failure to contact the paternal grandfather after attempting to contact him via phone and social media.

Over the course of the four years of this case, all family members interviewed by the Department or juvenile courts have denied Native American ancestry. Both mother and father denied Native American ancestry at the outset of the case and each subsequent inquiry thereafter. The minors also denied knowledge of any Native American ancestry. The Department contacted a family member from the paternal side of the family, uncle D.W., who denied any Native American heritage. Although the Department received no response from the paternal grandfather after it contacted him via social media, " 'there is no error . . . even if the [Department] did not inquire of everyone who has an interest in the [minors]' " because substantial evidence shows the juvenile court reasonably

concluded the initial inquiry was adequate to reach a reliable conclusion that ICWA did not apply. (*Dezi C. supra*, 16 Cal. 5th at p. 1166 (dis. opn. of Groban, J.).)

DISPOSITION

The juvenile court's orders are affirmed.

\s\
Krause, J.

We concur:

\s\
Hull, Acting P. J.

\s\
Wiseman, J.*

---

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.